## ISAAC R. LASH v. JONATHAN SPAYD ET AL.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS OF BERKS COUNTY.

Argued March 2, 1891—Decided April 6, 1891.
[To be reported.]

1. When a bill in equity, praying that an execution issued by the defendant against the plaintiff may be stayed, on the ground that the debt is equitably paid, and for an account, etc., contains statements as to the nature of the plaintiff's title to land levied on under the execution, such statements, if immaterial to the relief sought, cannot operate as an estoppel.

2. An averment that, plaintiff's husband being indebted to her and having given a judgment to another, it was arranged to prevent his wasting his

Statement of Facts.

estate and secure the same for the benefit of himself and his family, that
he should convey it to his wife, and " in consideration of the premises "
such conveyance was made, is not an admission that the conveyance was
voluntary or subject to a trust.

3. In ejectment by a purchaser at sheriff's sale against the wife of the per-
son whose title was sold, the plaintiff alleging that the land was con-
veyed to the wife in fraud of creditors, the record of the judgment in a
former ejectment between the same parties, on the same title, is not re-
ceivable as a conclusive adjudication of the matters in dispute.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and
WILLIAMS, JJ.

No. 219 July Term 1890, Sup. Ct.; court below, No. 104
May Term 1888, C. P.

On April 24, 1888, Henry H. Miller brought ejectment against
Jonathan Spayd for the undivided one half of a tract of land
containing 183 acres. On March 2, 1889, upon the petition of
Elvira L. Miller, averring that she was the landlord of the de-
fendant Spayd, and praying that she might be admitted as a de-
fendant upon the record, the court made an order permitting
her to become a party defendant.* The defendants pleaded not
guilty on March 23, 1889. On May 7, 1889, Isaac R. Lash, to
whom the land in controversy had been conveyed by Henry H.
Miller after the bringing of the action, was by agreement sub-
stituted upon the record as plaintiff.

At the trial on April 23, 1890, the plaintiff, in support of the
title under which he claimed, put in evidence the following:

Will of Henry Miller, deceased, admitted to probate June 11,
1864, devising the land in question to his two sons, Henry H.
Miller and Charles H. Miller, subject to the payment of legacies
amounting to $10,000; making Henry H. and Charles H. Mil-
ler his residuary legatees and devisees, and appointing them his
executors;

Judgment recovered March 23, 1872, by Reuben Klopp
against Henry H. Miller and Charles H. Miller, in an action
on a bond for the real debt of $1,500, dated April 1, 1869, and
executed by Charles H. Miller as principal and Henry H. Mil-

---

* Elvira L. Miller had previously recovered the same land in ejectment
against Henry H. Miller and another. The record of that action was of-
fered in evidence in this: See exceptions.[3] [4]

ler as surety.  Decree, June 28, 1875, subrogating Henry H. Miller to the rights of the plaintiff in said judgment;

Executions issued upon the Klopp judgment at the suit of Henry H. Miller, one of which, a pluries venditioni exponas to No. 56 December Term 1876, was stayed by the court. Sheriff's sale under a second pluries writ of venditioni exponas on June 14, 1879, to Henry H. Miller, of all the right, title and interest of Charles H. Miller in and to the land described in the writ of ejectment; and the sheriff's deed, in pursuance of said sale, dated and recorded February 26, 1881;

Deed from Henry H. Miller and wife to Isaac Lash for the same premises, dated November 29, 1888.

The plaintiff also made the following offer:

It appearing that venditioni exponas No. 56 December Term 1876, already offered in evidence, was stayed by the court, plaintiff offers in evidence the record of No. 230 Equity Docket, which was the bill of injunction under which the stay was granted.

Mr. Green: We object to the record in equity as irrelevant.

By the court: The record is admitted for the purpose of showing how the pluries venditioni exponas was stayed by the court.

—The record of the proceeding in equity referred to, exhibited the following matters:

On December 16, 1876, Charles H. Miller and Elvira, his wife, in right of said Elvira, filed a bill in equity against Henry H. Miller.  The bill recited the devise by the will of Henry Miller, deceased, to Henry H. and Charles H. Miller; the Klopp judgment and the proceedings thereon for subrogation; the issuing upon said judgment of an execution in favor of Henry H. Miller, and a levy by virtue of said execution upon Charles H. Miller's interest in the land devised as aforesaid. It averred, further, that letters testamentary on the estate of Henry Miller, deceased, were issued to Henry H. Miller, who became the surety of Charles in the bond given to Klopp, with the understanding that he should apply thereto from the funds coming into his hands of Charles's share of the estate, enough to discharge the debt, and that it was believed that upon a true statement of the accounts between Charles and Henry, including the Klopp judgment, a considerable balance would

be found due to Charles. It was further alleged that in the spring of 1871 Charles H. Miller was indebted to his wife Elvira to an amount exceeding $2,000 for moneys advanced and paid for him, and owed about $2,000 to other persons; that the latter indebtedness was paid by money borrowed from one Michael Haak upon a judgment, and that then, to prevent Charles H. Miller "from wasting his estate by contracting additional debts, and secure the same for the benefit of himself and family, it was arranged that his entire interest in his father's estate should be transferred to his wife Elvira; and in consideration of the premises the said Charles H. Miller conveyed the same through a trustee to his wife Elvira, as appears by deeds recorded." The prayers of the bill were for an account and a decree for the balance found to be due to Charles, after deducting the Klopp judgment; that the execution be stayed and further proceedings thereunder enjoined, and for general relief.

The court granted an injunction staying proceedings under the execution upon the Klopp judgment, until an account should be taken between the parties, and appointed a master to state such account. The result of the accounting was that a balance was found to be due to Henry from Charles amounting to $1,391.20, exclusive of the Klopp judgment, said balance being due by reason of Henry's having made disbursements out of his individual funds in discharge of legacies which, by the will of their father, were charged equally upon the interests of Charles and Henry in the land devised to them. The Court of Common Pleas refused to enter a decree in Henry's favor for the balance thus ascertained, and entered a decree against the plaintiffs for costs only. On appeal to the Supreme Court by Henry H. Miller, the decree of the court below was reversed and a decree entered against the plaintiffs for the payment of $1,391.20, with interest from February 2, 1881; with the proviso that the decree should not create any personal responsibility as to Elvira L. Miller, but should be enforceable against her by the sale of the lands conveyed to her by her husband: See Miller's App., 119 Pa. 620. Upon the return of the record to the court below, Henry H. Miller issued execution process for the enforcement of his decree, and subsequent proceedings were had which are set forth in Miller v. Klopp, post, 375.

Statement of Facts.

—The plaintiff's case being rested, the defendants offered in evidence a deed from Charles H. Miller and wife to Christian L. Bechtel, dated April 5, 1871, and recorded the following day, conveying the property in controversy; also a deed for the same property from Christian L. Bechtel to Elvira L. Miller, of even date with the deed to Bechtel, and recorded the same day. The expressed consideration of each deed was one dollar. The offer of the deeds being objected to, the court suggested that the defendants make an offer covering their entire case. Thereupon the defendants made the following offers:

Mr. Hiester: The defendant, Elvira L. Miller, offers to show that in the spring of 1871, her husband, Charles H. Miller, was indebted to her in an amount exceeding $2,500, which she had loaned him from her separate estate derived from her father, under his promise to repay an additional amount of $2,000 to other parties who were pressing him for payment; that, being unable to raise money upon his property because of uncertainty of title, to pay these debts, he conveyed by formal deed to his wife, Elvira, all his interest under his father's will, including the property in question, in consideration of the cancellation of the debts which he owed her, and of her furnishing him with $2,000 additional to pay all his other creditors, so far as he knew himself to be indebted, which money was so used for that purpose; that the conveyance to his wife Elvira was made under advice of counsel, and the consideration, though therein stated as $1, was, as above recited, amounting to upwards of $4,500, which was believed by all concerned to be and which was full and adequate and more than any one else could be found to pay; that the bond to Klopp on which Charles's brother Henry was surety, had been given under an arrangement between his brother and himself by which it was to be paid out of Charles's moneys in the hands of his brother Henry as executor of his father's estate, which both at that time considered amply sufficient for the purpose, and that Charles had no idea that he would ever be called upon to pay this debt; that the deed was not voluntary, nor intended to hinder, or delay, or defraud any creditors of Charles H. Miller; that the said deeds were formally recorded, and Henry was informed of them and recognized and acquiesced in their legality by offering to sell to the said Elvira L. Miller his half interest in

the same property in order that she might possess the whole,
and that negotiations were had between them for that purpose;
that Henry agreed to sell the interest at the rate of $125 per
acre to the said Elvira, but afterwards demanded $1,000 addi-
tional, on which account the negotiations fell through; that
when the Klopp bond was sued out in 1872, Henry paid the
same and caused it to be marked satisfied, but afterwards, being
apprehensive that the moneys of his brother in his hands would
not be sufficient to reimburse him, applied to court to have the
satisfaction stricken off and himself subrogated against his
brother Charles; that on this occasion, for the first time, he
questioned the conveyance from Charles to Elvira, his wife, and
then proceeded to sell the property on the Klopp judgment and
buy it in at sheriff's sale, which is his title in this case. The
purpose of this offer is to show a title in the defendant, Elvira
L. Miller, and that the deeds to her were not voluntary or
fraudulent, nor to delay creditors, but were executed in good
faith for a full consideration paid by her from her separate es-
tate.

Mr. Snyder : Will the defendants state whether this evidence
is offered for the purpose of showing that this title is absolute
in Elvira Miller, or whether she holds as trustee?

Mr. Hiester: It is an absolute title.

Mr. Jones: Plaintiff objects, because, first, that it appearing
in evidence that at the time of the execution of this assignment
to Elvira L. Miller by her husband, through Christian L.
Bechtel, of all his interest derived from the estate of his de-
ceased father, which counsel have stated was all the property
he had in the world, the said Charles H. Miller was largely in-
debted, and that the consideration for this assignment to his
wife was $1, is fraudulent upon its face as denuding him of
his entire estate; second, that at a former stage of these pro-
ceedings the exection issued upon the judgment held by the
plaintiff was stayed at the instance of Elvira L. Miller, the de-
fendant, upon her filing a bill in equity wherein she set forth
that her husband had conveyed or assigned the premises in
suit, being included in the property derived from his father's
estate, to her in trust for the use of her husband and his family,
and to prevent the squandering of the estate by the husband,
that being set forth as the consideration for the assignment of

the premises; third, that in said bill an account was prayed for of matters growing out of the real estate devised to them, Henry H. Miller and Charles H. Miller jointly, by the will of their father, Henry Miller, deceased, that a proper decree be entered for the balance which may be found due the said Charles H. Miller, after deducting the Klopp judgment, which is thereby admitted to be a charge upon the premises in suit, and that the said Elvira L. Miller is thereby estopped from setting up in this trial any title inconsistent with that set forth in said bill in equity, unless it may be some title subsequently acquired; fourth, that any evidence of conversations or negotiations between Henry Miller and the defendants about the sale of Henry Miller's interest to the defendants is irrelevant; and the evidence is generally incompetent, irrelevant and inadmissible.

By the court: Objection sustained; exception.[1]

Mr. Hiester: Defendants renew the offer after striking out the portion as to what Henry H. Miller offered to sell his land for, but retaining the fact that he recognized her title. The details merely are stricken out, and we say that those negotiations were had in the course of the year following the making of the deeds.

Mr. Snyder: Plaintiff renews the objection.

By the court: The ruling remains the same; exception.[2]

Mr. Hiester: Defendants offer in evidence the record of a suit in ejectment in the Court of Common Pleas of Berks county, No. 133 May Term 1883, between Charles H. Miller and Elvira his wife, in the right of said Elvira, as plaintiffs, and Reuben Klopp and Henry H. Miller as defendants, for the same premises in controversy in this suit; with a verdict and judgment thereon in favor of the plaintiffs in this suit, being the defendants in the other suit; and the defendants offer further to show that the said trial was had upon the same matters in controversy in this suit, to wit: the validity of the conveyance by Charles H. Miller to Elvira his wife. This is offered as persuasive evidence for the jury in this suit.

Mr. Jones: Plaintiff objects that whilst a former verdict in ejectment may be offered as persuasive evidence, it must be in connection with other evidence of title; that, standing alone, such evidence is totally insufficient and inadmissible.

By the court: Objection sustained; exception.[3]

Statement of Facts.

Mr. Hiester. Defendants renew the offer last above made, as conclusive evidence of the title of the defendants to the premises in controversy in this suit, and of the fact that the deeds of Charles H. Miller to Christian L. Bechtel, dated April 5, 1871, were not in fraud of creditors.

Mr. Jones : Plaintiff objects that most of this last offer is embraced in the former offer, and has already been ruled upon by the court as inadmissible ; and also that the whole offer is incompetent, irrelevant and inadmissible.

By the court: Objection sustained ; exception.[4]

Mr. Hiester : The defendants offer in evidence the record of suit in equity, No. 230 Equity Docket, in the Court of Common Pleas of Berks county, between Elvira L. Miller as assignee of Charles H. Miller v. Henry H. Miller, wherein it was so proceeded that a decree was made finding that the said Elvira L. Miller, assignee of Charles H. Miller, was indebted to Henry H. Miller in the sum of $1,391.20, payable out of the interest of said Charles H. Miller in his father's estate, so assigned to Elvira L. Miller; that the said Henry H. Miller thereupon recognized the fact that the sheriff's deed to him conveyed to him no title to the property in question, by entering a judgment against the said property for the said sum of $1,391.20, causing the said property to be levied on in order to collect the said judgment from the said property as the estate of the said Elvira L. Miller. The purpose of the offer is to show an election by the said Henry H. Miller to acquiesce in the title of Elvira L. Miller, and an estoppel against the assertion of the former title which he had acquired at sheriff's sale.

Mr. Jones : Objected to by plaintiff, that the record offered has already been admitted in evidence in the plaintiff's case, and that the subsequent matters of execution or method resorted to by the plaintiff's vendor to enforce the payment of money due him, under a decree of the Supreme Court is immaterial, irrelevant and inadmissible.

By the court: This record is already in evidence for the purpose expressed in plaintiff's offer in this cause, and, therefore, in evidence. The offer is rather as to the alleged effect than anything else. It occurs to the court that the point desired by the defendants had better be raised by an instruction

as to the effect of the record ; but, if the offer is insisted upon for the purpose expressed, we say it does not come up to the allegation in the offer; and, therefore, for such purposes, is inadmissible ; exception.[5]

The defendants' case was then rested, and the court, ERMENTROUT, P. J., charged the jury as follows :

The various offers presented by the defendants to show the facts which they claim would make out their case, were objected to by the plaintiff, and the objections were sustained by the court. The evidence submitted by the plaintiff is altogether record testimony, and the records show that there was a judgment obtained against Charles Miller, upon which execution issued, and the interest of Charles Miller in the lands and tenements described in the writ was sold; that the title was purchased by Henry H. Miller, and by him subsequently conveyed to Isaac R. Lash. The judgments, deeds and other documentary evidence were read in your hearing, and there being no possible dispute in this case, the court instruct you to find a verdict in favor of the plaintiff for the premises described in the writ.

The defendants ask the court to charge the jury :

1. The plaintiff, Henry H. Miller, and his vendee, Isaac R. Lash, claiming to be the owners of the premises in controversy by sheriff's deed, are estopped from asserting their claim in this action by the levy of an execution in favor of the said Henry H. Miller, upon the same property as the property of the defendants ; and the verdict should be for the defendants.

Answer : This point is refused.[6]

The plaintiff presents the following point :

1. The court is respectfully asked to instruct the jury to find for the plaintiff for the premises described in the writ.

Answer : This point is affirmed.[7]

—The jury returned a verdict for the plaintiff as directed. A rule for a new trial having been discharged and judgment entered, the defendants took this appeal, assigning for error :

1–5. The refusal of defendants' offers.[1 to 5]

6. The refusal of defendants' point.[6]

7. The affirmance of plaintiff's point.[7]

Arguments.

*Mr. Isaac Hiester* and *Mr. A. G. Green* (with them *Mr. D. E. Schroeder*), for the appellants:

A stronger case of the absence of fraud against creditors than was presented by our offers, cannot well be imagined. But it is objected that Mrs. Miller alleged in her bill in equity that the conveyance to her was in trust for her husband and his family and to prevent his squandering the estate, and that she is therefore estopped from proving the truth in this case.

1. It is not true that the bill in equity alleges that the conveyance was in trust for Charles and his family. A fair construction of the language used is that it was made in consideration of the $2,000 which he owed to his wife, and $2,000 additional raised to pay other creditors. If the bill is fairly capable of this construction, then any other construction, even though it seem to the court a more reasonable one, is not sufficiently certain for the basis of an estoppel. But, assuming that the words " in consideration of the premises " refer, not to the indebtedness mentioned, but to the motive of the parties stated, the utmost that can fairly be contended is that the language imports a voluntary conveyance for the benefit of the wife, and Mr. Justice CLARK seems so to have construed it in Miller's App., 119 Pa. 620. If that construction be adopted, still, as the Klopp debt was thought to be amply provided for by Charles's share of the estate in Henry's hands, and no fraud was intended against Henry, the conveyance was good: Mateer v. Hissim, 3 P. & W. 160; Wilson v. Howser, 12 Pa. 109.

2. How does the bill estop Elvira from proving the truth of her case? Charles had assigned to her two things: his undivided half of this land, and his interest in the estate in the hands of Henry as executor. To obtain the latter, the bill prayed for an account and a decree for payment. Whether she claimed it as a purchaser or as a volunteer, she was entitled to the relief prayed, and if by mistake the bill did describe the conveyance as voluntary or in trust, such averment was immaterial. An immaterial averment in a pleading is evidence as an admission, but not as an estoppel. Moreover, we proposed to show that Henry acquiesced in the conveyance. If there were any basis for an estoppel in the language of the bill, the jury should have been asked to find whether the plaintiff acted upon it. There is no merit in the objection that in her bill Elvira proposed that

Arguments.

the Klopp judgment should be deducted from the estate conveyed to her by Charles, and thus admitted it to be a charge on the land. She was bound to permit the deduction from the personal estate, inasmuch as the arrangement between Charles and Henry was substantially an equitable assignment thereof, as security for that liability, and she did not thereby admit a charge on the land.

3. The first ejectment between the same parties, on the same title, resulting in a verdict and judgment for Elvira, was a conclusive answer to the plaintiff's theory of an equitable estoppel against the defendant. The verdict and judgment were conclusive, because the ejectment was equitable. The legal title was conveyed by Charles to his wife, through Bechtel, and nothing remained if the conveyance was fraudulent, except an equitable right of creditors to avoid the deed, by having the voluntary grantee declared a trustee for them. Such an ejectment as this is not the ordinary legal possessory action, but is a substitute for a bill in equity: Peterman v. Huling, 31 Pa. 433. Hence, the verdict and judgment have all the conclusive effects of a decree in equity: Winpenny v. Winpenny, 92 Pa. 440. But even if this were not so, they are certainly admissible as some evidence of the defendant's title: Koons v. Hartman, 7 W. 25. Finally, how does Henry stand? He endeavors to have Elvira estopped by a slip of her counsel in pleading an immaterial averment. What, then, shall be said of his position in denying her title, while proceeding to collect a lien against her property under the decree in Miller's App., 119 Pa. 620? Such a proceeding estops him from claiming adversely to her: 2 Herman on Estoppel, § 1060.

*Mr. Jefferson Snyder* and *Mr. Richmond L. Jones* (with them *Mr. George F. Baer*), for the appellee:

1. Unless this court is now prepared to decide that the opinion delivered ·in Miller's App., 119 Pa. 620, is erroneous, the judgment in the present case should be affirmed. It is to be borne in mind that the sheriff's sale, on which the plaintiff's title rests, was held after Mrs. Miller had spread upon the record in her bill in equity, a description of her title admitting that she held the estate by a voluntary conveyance for the benefit of her husband and his family. The only thing which her

bill offered as an objection to the execution and sale, was the statement found, prior to the sale, by the master's report and decree, to be false, that the Klopp judgment was paid, or rather that the execution creditor had in his hands the means of payment. The purchaser at the sheriff's sale took the property with the record before him that Mrs. Miller made. What was there in it to deter him from buying? Was not her bill an admission, by solemn and indisputable record, that the judgment in execution was a valid lien upon the land, and that a sheriff's sale thereof would divest her title?

2. The averments of the bill as to the nature of the title held, were not immaterial, but were essential to the jurisdiction of the court to grant the relief sought. If the estate was held by Mrs. Miller in her own right, for a valid consideration, a sheriff's sale on the judgment against her husband would not affect her title and she could on no ground demand an injunction. But by setting up a trust in herself for her husband's benefit, and alleging that the judgment was equitably paid, she laid sufficient grounds for the injunction, which was granted and continued in operation for over two years, subjecting the execution creditor to long delay and thereby manifestly altering his position, to say nothing of the fact that his purchase at the sale was in reliance upon her admissions. This constitutes an estoppel by the record: Garber v. Doersom, 117 Pa. 162; Hidell's App., 9 W. N. 212; Wilson v. Hamilton, 9 S. & R. 430; Anderson's App., 4 Y. 35.

3. It is not disputed that the record of a former judgment in ejectment may be given in evidence; that it may be offered as persuasive evidence, is clear enough: Koons v. Hartman, 7 W. 25; Beck v. Graybill, 28 Pa. 66; Hood v. Hood, 2 Gr. 230. But nowhere is it held to be evidence, sufficient in itself and without more to carry a case. Unless the court is prepared to say that the former verdict and judgment were sufficient, without other evidence, to sustain a verdict, their rejection in this case did the defendants no injury. The whole strength of the defendants' position depends upon the assumption that our suit is an equitable ejectment. But neither of the cases cited to support this assumption is like ours. It is manifest that our case is the ordinary legal ejectment: Curry v. Curry, 114 Pa. 367. If so, there is nothing to prevent the plaintiff from set-

Opinion of the Court.

ting up a claim of title differing from the line of defence advanced in the former suit: Rice v. Bixler, 1 W. & S. 445.

OPINION, MR. JUSTICE CLARK:

For the purposes of this case we must assume that the facts embraced in the defendants' offers are true, or, rather, that the offers would have been justified by the proofs. We must assume, therefore, that the deed of April 5, 1871, from Charles H. Miller and Elvira, his wife, through Bechtel, as a trustee, to the said Elvira L. Miller, although upon a merely nominal consideration, was a transaction in good faith, founded upon a full consideration paid at or prior to the execution thereof; that the consideration advanced was taken out of her separate estate by Elvira L. Miller and was used in relief of her husband, and that this was an adequate and full price for the land; that at the time of this conveyance Charles H. Miller and his wife were under the belief that Henry H. Miller, who was the executor of Henry Miller, deceased, had funds in his hands belonging to Charles, sufficient to pay the Klopp judgment in relief of his obligation as surety, according to their agreement to that effect; and that there was no purpose in the mind of Charles or of his wife to hinder, delay, or defraud Henry H. Miller to whom the judgment had been assigned, or any other creditor of Charles H. Miller. Assuming these facts, and that the defendants were not in any way precluded from asserting them, the plaintiff had no case, for the legal title to the land in dispute was in Elvira, before the entry of the Klopp judgment through which the plaintiff claims title.

The plaintiff's contention, however, is that the defendant, Elvira L. Miller, through whom Spayd claims, estopped herself from asserting these facts in support of her title; that in the seventh clause of the bill in equity, filed December 16, 1876, she set forth her title under the deed of April 5, 1871, as upon a voluntary conveyance; and that she cannot now assert, to his prejudice, that the deed was in fact founded in an adequate consideration fully paid.

Henry H. Miller and Charles H. Miller were the sons of Henry Miller, deceased, and were the devisees jointly of the real and personal estate of their father. Charles alleges that the belief and understanding was, when Henry became surety on

Opinion of the Court.

the Klopp bond, that there would be enough money in Henry's
hands belonging to him, to pay the Klopp debt. Judgment
was afterwards entered, however, by Klopp, and Henry paid it
off, obtaining a decree of subrogation to the rights of Klopp.
Execution was thereupon issued, with a view to levying upon
Charles's interest in the land, when Charles and his wife Elvira
joined in a bill against Henry for an account and a stay of pro-
ceedings on the judgment in the meantime.* It was in the re-
citals of this bill that the alleged estoppel is supposed to arise.
In the seventh clause of the bill the complainant says:

"7. That in the spring of 1871 Charles H. Miller was found
to be indebted to different parties to an amount exceeding
$4,000, of which over $2,000 was owing to his wife Elvira, for
debts paid and money advanced for him, and $2,000 or there-
abouts, to other persons; for the payment of this latter sum
$2,000 was borrowed from Michael Haak, and applied to the
indebtedness of Charles H. Miller, not including the Klopp
bond, which was expected to be paid by Henry H. Miller out of
Charles's share of the estate; that to secure the amount loaned
by Michael Haak a judgment bond was executed in his favor
for said sum of $2,000, duly entered to No. 363 March Term
1876, in the Court of Common Pleas for Berks county, on the
sixth day of April, 1871; that subsequent to the entry of said
bond, in order to prevent the said Charles H. Miller from wast-
ing his estate by contracting additional debts, and to secure the
same for the benefit of himself and family, it was arranged that
his entire interest in his father's estate should be transferred
to his wife Elvira; and in consideration of the premises the said
Charles H. Miller conveyed the same, through a trustee, to his
wife Elvira, as appears by deeds duly recorded in the recorder's
office for Berks county."

The title to the land was not in any way brought in issue by
this bill. It was a bill for an account, merely. The accounting
resulted in a balance of $1,391.20 against Charles, exclusive of
the Klopp judgment. It appeared during the investigation
that in the payment of the legacies charged on the land not
only was the personal estate wholly exhausted, but that Henry
had paid out of his own pocket a considerable sum; and, as by

---

* See Miller's App., 119 Pa. 620.

Opinion of the Court.

the will of their father both Henry and Charles, as joint devis-
ees, were bound for payment thereof, Henry was subrogated
to the rights of the legatees, as against Charles's interest in the
land held by his wife, for Charles's share of the deficiency.
What was said in the opinion filed, with reference to the title,
was wholly unnecessary in arriving at the result reached by the
decree.   It was a matter of no consequence, whatever, whether
Elvira L. Miller held the land upon a merely voluntary con-
veyance, or upon a conveyance for full value paid, for the lien
of the legacies antedated the deed, and entitled Henry to the bal-
ance upon the account as against any conveyance Charles might
have made.   The title of the land was not brought in issue
by the bill or by the pleadings : what was said on that subject
was doubtless upon the assumption that the conveyance, which
was made upon a merely nominal consideration, was voluntary ;
it was intended merely to illustrate the want of equity in Elvira,
as a purchaser of the land, to complain that she was held for the
amount of the decree.   There was no adjudication upon the
title of the land: the thing adjudicated was the account, and
in the adjudication of the account the title to the land was in
no way involved.   What reference was made to the title was
merely incidental : it was, as we have said, unimportant for the
purposes of that case whether the deed was voluntary or for
value, for, in any event, the lands owned by Charles and which
he conveyed to his wife, were bound by the prior lien of the
legacy, to which Henry had been subrogated.

What ground is there, then, for an estoppel ?   If it be true
that Elvira L. Miller was a bona-fide purchaser for value of the
premises in dispute, what statement in the seventh section of
the bill will preclude her from showing the fact ?   She does not
there state that she held the land by voluntary conveyance ; she
states, in substance, what she now offers to prove, that her hus-
band was indebted to her in the sum of $2,000 or $2,500, money
advanced from her separate estate in the payment of his debts ;
that $2,000 more was afterwards borrowed or furnished for the
same purpose, for which latter sum a judgment was entered ;
and that subsequently, in order to prevent the said Charles H.
Miller from wasting his estate by contracting additional debts,
and to secure the same for the benefit of himself and family, it
was arranged that his entire interest in his father's estate should

be transferred to his wife, Elvira, and *in consideration of the premises* the conveyance was made. Whether it was the design and intent of the parties to secure the land for the benefit of himself and family indirectly, through the bona-fide purchase of the land by the wife or otherwise, is a matter to be determined upon the proofs.

We think the offers contained in the first, second, and third assignments of error should have been received: whether the transaction alleged therein was in good faith and upon a full consideration or not was for the jury; we can see no ground for an estoppel. The offers contained in the fourth and fifth assignments were not admissible for the purpose stated, and the sixth assignment is without merit. The seventh was ruled upon the testimony received, and it is unnecessary to consider it.

> The judgment is reversed, and a venire facias de novo awarded.