## APPEAL OF HENRY H. MILLER.

## [C. H. MILLER ET UX. v. H. H. MILLER.]

APPEAL FROM THE DECREE OF THE COURT OF COMMON PLEAS
OF BERKS COUNTY.

Argued February 27, 1888—Decided April 16, 1888.

A husband conveyed to his wife his interest in real estate devised to him and his brother jointly and subject to the charge of legacies. The brother was in possession and had received the rents and profits for a number of years and paid the legacies charged, when a controversy arose about a judgment held by the brother against the husband and which the former was trying to enforce against the latter's interest in the land.

The husband and wife joined in a bill in equity, in right of the wife, praying for an injunction against the enforcement of the judgment by execution, for an account between the husband and brother and for a decree for the balance due the husband. The account as finally determined showed a balance due from the husband to the defendant: *Held*,

1. That the defendant was entitled to a decree for the payment of this balance against both husband and wife, enforceable against the wife, however, only by the seizure and sale of the lands described in the bill.

2. The right to subrogation is not confined to cases of strict suretyship. The rule embraces purchasers in common of an estate bound by a joint lien, and may be enforced whenever one, not a mere volunteer, discharges the debt of another, so as to compel the ultimate discharge by him who in good conscience ought to pay it.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 119 January Term 1887, Sup. Ct.

On December 16, 1876, a bill in equity was filed in which Charles H. Miller and Elvira, his wife, in right of said Elvira, were plaintiffs and Henry H. Miller, defendant, which in substance averred:

That Henry Miller died May 9, 1864, devising to his two sons, Henry H. and Charles H., 183 acres of land charged with legacies amounting to $10,000, bequeathing to these sons the residue of his estate and appointing them his executors.

That letters testamentary were granted to Henry H. Miller alone, who proceeded to administer the estate and filed a partial account on May 14, 1869, showing a balance in his favor as accountant of $5,126.32, the legacies, charged as aforesaid, being included among the credits of the account; and that subsequently this account was modified by the report of an auditor, filed February 26, 1870, and afterwards confirmed absolutely, finding a balance due the accountant of $5,424.12.

That on March 23, 1872, one Reuben Klopp obtained a judgment against Charles H. and Henry H. Miller on a bond for $1,500, in which Charles H. was principal debtor and Henry H. his surety, the latter agreeing that he would see it paid out of the former's interest in the estate; that execution was issued upon said judgment and, the debt having been paid by Henry H., he was subrogated to the judgment plaintiff's rights and afterwards issued execution against Charles H. and levied upon the latter's interest in the farm devised as aforesaid.

That if a true account were stated between said Charles H. and Henry H., including the amount of the Klopp judgment, a considerable balance would be found due to Charles H.; that, notwithstanding that fact, it was the obvious design of the defendant to get possession of the interest of Charles H. in the land by means of execution process and thereby sweep away the entire inheritance from him; that the defendant being the sole executor of the estate had had the entire control and management of the same since the testator's death, and it would be unconscionable and inequitable to allow him to sell the interest of Charles H. in said lands before a final settlement of the estate.

That in the spring of 1871, Charles was found to be indebted to an amount exceeding $4,000, of· which over $2,000 was owing to his wife Elvira, for debts paid and money advanced to him and about $2,000 to other persons; that, to prevent said Charles H. from wasting his estate by contracting additional debts and to secure the same for the benefit of himself and family, it was arranged that his entire interest in his father's estate should be transferred to his wife, and, in consideration of the premises, the same was conveyed to said Elvira through Charles L. Bechtel, as trustee.

That, if the property devised to Charles H. and levied on should be sold, under the uncertainty existing in reference to liens of judgments, as also the testamentary liens claimed by the defendant still to exist and to which he claimed to be subrogated, as well as the right of Elvira under said deeds, it was believed the property would be sacrificed.

The prayers were: " (1) That an account may be stated, under the direction of the court, between the said Henry H. and Charles H., of all matters growing out of the real estate devised to them jointly by the will of their father, Henry Miller, deceased. (2) That a proper decree may be entered for the balance which may be found due to the said Charles H., after deducting the Klopp judgment. (3) That the writ of venditioni exponas· be stayed and set aside or the said Henry H. Miller be enjoined to stay the same and that he be restrained by injunction from further proceeding on said writ." (4) For further relief.

A preliminary injunction was awarded and thereafter the defendant filed an answer denying all the material averments of the bill, and, issue being joined, the cause was referred to *Mr. John Ralston*, as examiner and master. During the contention before the master, on June 14, 1878, by agreement of ‘ the parties, the master, was appointed by the Orphans' Court to review a second or supplementary account of Henry H. Miller, as executor of Henry Miller deceased, and, having considered the matters therein brought before him, found a balance due the accountant of $5,613.65, which included the balance found due by the report of the former auditor, but did not embrace the Reuben Klopp judgment. This report was

modified by the court on exceptions filed and was confirmed, showing a balance due the accountant of $5,604.55.

The master then proceeded to pass upon the controversies in the equity cause and, by a report filed December 30, 1878, and modified August 16, 1880, upon a re-reference to him, found that Charles H. Miller was liable for one half of the testamentary charges upon the land devised, and, stating an account, found also that there was a balance due Henry H. Miller of $2,782.41 ; "hence Charles H. will owe Henry H. one half of this balance, to wit: $1,391.20." On February 2, 1881, the court, SASSAMAN, J., dismissed all the exceptions filed, and ordered : "The said master's report is now approved and the account stated therein is confirmed absolutely."

No further proceedings were then taken in the cause for some time ; but on the filing of the first report of the master on December 30, 1878, on motion the preliminary injunction was dissolved and it seems that thereupon Henry H. Miller pursued his execution on the Klopp judgment to a sheriff's sale and became the purchaser of Charles H.'s interest in the land devised and by a summary process after three months notice ejected the plaintiffs in the bill from possession of the moiety sold and purchased. On January 21, 1886, Henry H. Miller, by his counsel moved that the following final decree be made :

This cause came on to be heard and on the second day of February, 1881, the court dismissed the exceptions to the master's report, and decreed that the said master's report is now approved and the amount stated therein is confirmed absolutely.

And now in consideration thereof, it is ordered, adjudged and decreed that the plaintiffs in this cause pay to the said defendant, Henry H. Miller, the sum of $1,391,20 with interest from the second day of February, 1881, and that the plaintiffs pay all the costs.

Thereupon, to the form of this decree, Elvira L. Miller, as one of the plaintiffs in the bill, filed exceptions:

1. No decree can be entered against Elvira L. Miller, the wife of Charles H. Miller, in this proceeding, as a suit in equity by husband and wife, even for the benefit of the wife, is to be considered only as the suit of the husband.

2. The amount found due Henry H. Miller by the master's report is only the debt of Charles H. Miller and not the debt of the wife, and therefore there can be no judgment or decree entered jointly against the husband and wife.

3. That under the allegations of the bill, and the purpose for which it was filed, viz.: To stay the execution by which Henry H. Miller, the above defendant, intended to sell the interest of his brother Charles in the real estate of his father, the defendant is not entitled to a decree against the plaintiffs jointly or against Charles H. Miller alone, for the sum of $1,391.20, and that the only decree that can properly be entered, is a decree for costs, so far as the costs may be unpaid, against the said Charles H. Miller.

On the argument of the foregoing motion and exceptions, the court, ERMENTROUT, J., filed the following opinion and decree:

On March 23, 1872, Reuben Klopp obtained judgment against Charles H. Miller and Henry H. Miller for seventeen hundred and sixty-eight dollars ($1,768). This judgment passed into the hands of Henry H. Miller who issued execution, levying upon the interest of Charles H. Miller in a farm of one hundred and eighty-three acres.

Condemnation of the land was had, and subsequently a pluries venditioni exponas was issued to 56 December Term, 1876. Thereupon Charles H. Miller and Elvira L., his wife, in right of Elvira, presented the present bill in equity, asking for an injunction to prevent the sale of the real estate so levied upon. The bill alleged that in 1871 Elvira Miller became the owner of the right, title and interest of Charles Miller in the land levied upon. Although the bill is neither very clear nor logical, her claim to title is set forth. The proceeding is evidently founded upon the authority of Hunter's Appeal, 40 Pa. 195, and kindred cases, where it is held that a levy and sale of a wife's real estate by a creditor of her husband, on execution, is contrary to law and may be restrained by injunction; that wherever a clear case of title is properly made under the acts of 1848 and 1850, a court of equity will interfere; otherwise not, and the parties are left to their remedy at law.

True, an additional prayer was made "that an account should be stated under the directions of the court between the

said Henry H. Miller and Charles H. Miller of all matters growing out of the real estate devised to them jointly by the will of their father, Henry Miller, deceased, and a proper decree be entered for the balance which may be found due to the said Charles H. Miller after deducting the Klopp judgment." But the account could only be incidental to and as furnishing facts in aid of the prayer for an injunction. The bill alleged as an equitable reason for not permitting execution to issue, the circumstances under which the Klopp bond or judgment had been given; that Henry Miller had given his brother Charles the assurance that he would see the amount of the Klopp indebtedness paid out of the share of Charles in his father's estate; that Henry having been in possession of the entire estate of the father should be obliged to settle and account, and that as a result of such account, it would appear that Henry had in his hands a sum of money belonging to Charles which would more than pay the judgment upon which the execution issued. The master found otherwise; that Henry had $2,782.41 more of credits than Charles, and that each owning an equal share in the estate, found that Charles owed Henry one half, or $1,391.20. This brings us to the point in controversy as to the form of decree asked for. We are not asked to review the master's conclusions or the actions of the judge in confirming the master's report. The injunction was granted and afterwards dissolved. We are not at all clear as to the right of Elvira, the wife, to ask a statement of an account between Charles and Henry, nor that such account could affect her rights or the merits of her bill. Its only purpose so far as she was concerned, was to show an alleged equitable payment of the Klopp judgment, as one of the reasons for the equitable interference by injunction to restrain the process of execution and sale. The master finds no indebtedness upon her part. The finding of an indebtedness against the husband cannot fix a liability upon the wife. She does not present this bill in equity as the trustee of her husband, but it is upon its face distinctly asserted to be "in right of the said Elvira L., the wife." We therefore decline to make the decree in form as requested.

And now to wit: Nov. 8, 1886, it is ordered, adjudged and decreed that defendant's draft of the decree, be disapproved,

that the exceptions filed by Elvira L. Miller, to the said decree be sustained and that plaintiffs pay all the costs, and that the prothonotary shall enter this decree in his equity docket as the final decree of the court in this case.

Thereupon the defendant took this appeal assigning the said decree as error.

*Mr. Geo. F. Baer* (with him *Mr. R. L. Jones*), for the appellant:

1. The court seems to have thought that the effect of the decree would be to make the wife personally liable, but, of course, that liability would not extend beyond the estate she had acquired from her husband; it was in the nature of a proceeding in rem. The wife took the estate charged with all the liabilities attached to it at the time of the conveyance to her; only on this ground could she maintain her bill. The bill was so broadly drawn that the court was enabled to settle all controversy between the parties, on the familiar principle that when a court of equity is in possession of the case and has jurisdiction of the subject matter, it may proceed to make a proper decree to do justice between the parties: Danzeisen's App., 73 Pa. 65; Wilhelm's App., 79 Pa. 120.

2. There can be no doubt of the defendant's right to a lien on Charles H.'s interest for any balance paid in relief of a charge on the common property; the equitable doctrine of subrogation applies: Gearhart v. Jordan, 11 Pa. 331; McCormick v. Irwin, 35 Pa. 117; Bender v. George, 92 Pa. 39; Story's Eq. J., §§ 552, 1234. The conveyance by Charles H. to his wife could be no protection against the existing charges. Therefore it was, she filed her bill to have a settlement of the accounts growing out of the common property. What right would she have to come into a court of equity to demand an account, if the account when made did not affect the estate in her hands?

*Mr. A. G. Green* (with him *Mr. D. E. Schroeder*), for the appellees:

1. As the wife is not liable for the debt of the husband, there can under no circumstances be a decree against her, even for costs. The form of the decree which the court was requested to make was therefore defective in joining the wife and making her property liable to be seized by execution.

When a bill in equity has been instituted by the husband and wife, though for the wife's benefit, it is regarded as the debt of the husband and no decree, even for costs, can be entered against the wife: 1 Dan. Ch., 108; Wake v. Parker, 2 Keen 59–70; Davis v. Prout, 7 Beav. 288–290; Johnson v. Vail, 1 McCarter 422; Kerchner v. Kempton, 47 Md. 567.

2. There was no lien in rem. The principle invoked by the appellant's counsel, as quoted from the case of Gearhart v. Jordan, 11 Pa. 331, may be very good law, but where legacies, which for present security are made a charge upon land, are directed to be paid off by the executor within six years, and they are actually paid off with the money of the estate within five years of the testator's death, they cease to be liens. It is idle to argue that such liens are to be considered as subsisting for seventeen years after they have been discharged and released.

OPINION, MR. JUSTICE CLARK:

In order to have a complete understanding of this case, a statement of the material facts is necessary. On the 23d March, 1872, Reuben Klopp obtained a judgment against Charles H. and Henry H. Miller, upon a bond for $1,500, in which Charles was the principal debtor, and Henry, the surety. The judgment having been paid by and transferred to Henry, he issued execution, and levied upon Charles's interest in a tract of land containing 183 acres, situate in Berks county, and thereupon this bill in equity was filed by Charles H. Miller and Elvira his wife, in the right of said Elvira, against Henry H. Miller. The bill sets forth, in substance, that one Henry Miller died May 9, 1864, devising inter alia to his two sons, the said Charles H. and Henry H. Miller, the tract of land in question, charged with legacies amounting to $10,000; that letters testamentary upon the estate of Henry Miller, deceased, were issued to Henry H. Miller, who, on the 14th May, 1869, filed an account, in which he has credit for payment of the debts, etc., and also the legacies above mentioned, showing a considerable balance due to him; that it was the understanding at the time the bond was given to Klopp, that Charles's prospective share in the estate would, upon a full and final settlement, be sufficient to pay it, and that Henry should

apply from the funds coming into his hands of Charles's share
enough to discharge the debt, and that it was believed, upon a
true statement of the accounts between Charles and Henry,
including the Klopp judgment, a considerable balance would
be found due to Charles. The bill further sets forth, that
Elvira L. Miller, wife of Charles, in view of certain pecuniary
embarrassments into which he had fallen, had advanced some
$2,000 of her own money in his relief, and that subsequently
on the 6th April, 1871, in order to prevent the said Charles H.
Miller from wasting his estate by contracting additional debts,
and to secure the same for the benefit of himself and family,
he had conveyed his interest in the land, through a trustee, to
his wife. It was further alleged in the bill, that if Charles's
interest in the land should be sold by the sheriff, in pursuance
of the writ, in view of the uncertainty as to the title and liens,
the property would be sacrificed; therefore praying for an
account, etc., for a decree for the balance due Charles, and
that the execution of the writ should be enjoined. The de-
fendant filed his answer denying the material allegations of
the bill, and the case was sent to a master.

It appears by the report of the master, that on the 24th
August, 1875, the executor filed a second account, which after
confirmation was opened for review and referred to an au-
ditor, who found the true balance due to the accountant, in-
cluding the balance on the former account, and exclusive of
the Klopp judgment, to be $5,613.65; which account, after
having been corrected by the court so as to show a balance
of $5,604.55, was finally confirmed. The master, after full
consideration of the whole case, debited Henry with items
amounting to . . . . . . . . . . . . .        $7,712.11
and credited him with . . . . . $4,889.97
also, with balance due Henry on his
  final account. . . . . . . . .     5,604.55
Leaving a balance to Henry . . . . . . .        $2,782.41

                                               ──────────  ──────────
                                               $10,494.52  $10,494.52

The master recommended a decree that the plaintiffs,
Charles H. and Elvira L. Miller, be ordered and decreed to pay
to Henry H. Miller one half of this balance, being $1,391.20,

with interests and costs. To this report of the master, exceptions were filed, to the effect, that no decree could be made against Elvira L. Miller, and that as the amount due Henry was the debt of Charles, not of his wife, no decree could be entered against them jointly.

The learned judge of the court below disagreed with the master as to the form of the decree. He says : "We are not asked to review the master's conclusions, or the action of the judge in confirming the master's report. The injunction was granted and afterwards dissolved. We are not at all clear as to the right of Elvira, the wife, to ask a statement of an account between Charles and Henry, nor that such account could affect her rights or the merits of her bill. Its only purpose, so far as she was concerned, was to show an alleged equitable payment of the Klopp judgment, as one of the reasons for the equitable interference by injunction, to restrain the process of execution and sale. The master finds no indebtedness upon her part. The finding of an indebtedness against the husband cannot fix a liability upon the wife. She does not present this bill in equity as the trustee of her husband, but it is upon the face distinctly asserted to be 'in right of the said Elvira L. the wife.' We, therefore, decline to make the decree in form as requested." The exceptions were sustained, and it was ordered that the plaintiffs pay the costs.

The entry of this decree is the error assigned.

Although the bill purports to have been filed by " Charles H. Miller and Elvira L. Miller his wife, in the right of said Elvira," yet the causes of complaint embraced therein, and the measure of relief sought, show that it was intended to serve a wider purpose than merely to protect her title. The husband joined in all the averments of the bill, and in the prayer for relief; nowhere, excepting in the statement of the parties, will it appear that the suit is preferred by the wife in her own right, and for her exclusive benefit. The prayers of the bill are, first, " that an account be stated between Henry H. Miller and Charles H. Miller, of all matters growing out of the real estate devised to them jointly by the will of their father, Henry Miller, deceased;" second, " that a proper decree be entered for the balance which may be found due to the said Charles H. Miller, after deducting the Klopp judgment;" third, "that

the writ of venditioni exponas be stayed, and execution of the said judgment enjoined;" and fourth, "such other and further relief as may be proper." As the husband was joined with the wife in the pleadings, and the prayer was for relief which, if granted, was partly in her right as his assignee and partly in his own right, covering matters, however, arising out of the same transaction, the bill may be taken as a joint bill to obtain the relief prayed for. Especially is the bill to be so considered, in view of the fact that the trial proceeded upon this assumption, the evidence introduced being wholly consistent with this manifest and obvious intention of the parties.

Elvira L. Miller was the assignee of her husband; in the spring of 1871 Charles H. Miller was found to be indebted to different parties to an amount exceeding $4,000; part of which, perhaps $2,000, was owing to his wife, and a loan of $2,000 was effected by judgment upon the property to pay the balance. On the 6th April, 1871, "in order to prevent the said Charles H. Miller from wasting his estate by contracting additional debts, and to secure the same for the benefit of himself and family," it was arranged that his entire interest in his father's estate should be transferred to his wife, and it was "in consideration of the premises" the conveyance was made. The plaintiffs were therefore the proper parties to a bill for an account of the matters alleged in the bill, and the defendant conceding this, exhibited his accounts and vouchers before the master. If the accounting resulted in his favor, we see no good reason why he was not entitled to a decree, not only as against Charles, who joined in the bill with full knowledge of its contents, but also against his wife, who was the assignee of the estate bound by the legacies and liens aforesaid. The legacies were charged upon the land by the express provisions of the will, and Henry, who was held therefor jointly with Charles, upon payment thereof, was without doubt entitled to be subrogated to the rights of the legatees, as against Charles's interest in the land in the hands of his wife, as he had previously been subrogated to the rights of the plaintiff in the Klopp judgment, in which he was surety; for, whilst he was the principal debtor as to one half of the legacies, he would be regarded as surety for Charles as to the other half. It is plain that Elvira Miller took the estate charged with all the liabili-

ties attaching to it at the time of the conveyance. She cannot be regarded as a purchaser for value; the conveyance was voluntary; it was made to prevent her husband "from wasting his estate by contracting additional debts, and to secure the same for the benefit of himself and family." Such a conveyance would not be available to defeat the claims of existing creditors, and the Klopp judgment was a lien upon the land from the date of its entry. Moreover, her title was under the will of Henry Miller, deceased, by the provisions of which the legacies were expressly charged upon the land.

Subrogation may be enforced whenever one, not a mere volunteer, discharges the debt of another: Cottrell's Appeal, 23 Pa. 294. It is not confined to cases of strict suretyship; it is a mode which equity adopts to compel the ultimate discharge of a debt by him who, in good conscience, ought to pay it: Bender v. George, 92 Pa. 36. The rule embraces purchasers in common of an estate bound by a joint lien. As between themselves, the purpart of each is liable to contribute only its proportion towards the discharge of the common burden, and, beyond this, is to be regarded simply as the surety of the remaining purparts. In this respect they are to be treated as the several estates of joint debtors, one being surety of the other; and, if the purpart of the one is called on to pay more than its due proportion, the tenant, or his lien creditors, upon the principle settled in Fleming v. Beaver, 2 R. 128; Croft v. Moore, 9 W. 451, and Neff v. Miller, 8 Pa. 347, is entitled to stand in the place of the satisfied creditor to the extent of the excess which ought to have been paid out of the other shares: Gearhart v. Jordan, 11 Pa. 331.

It cannot be pretended that the legacies were paid out of the funds of the estate. The account shows that the assets in the hands of the executor were insufficient for the purpose, and it is only as to the balance due the accountant, over and above these assets, that subrogation can apply. We are of opinion that the learned judge should have entered a decree in favor of Henry H. Miller for the balance found to be due to him by the master. This decree, as to Elvira L. Miller, of course, should not impose any personal liability.

And now, April 16, 1888, the decree of the Court of Common Pleas is reversed; and it is ordered, adjudged, and decreed

that Charles H. Miller and Elvira L. Miller his wife, the plaintiffs below, pay to Henry H. Miller, the defendant below, the sum of $1,391.20, with interest from 2d February, 1881, together with all the costs, and the costs of this appeal. It is ordered, however, that this decree shall not create any personal responsibility as to the said Elvira L. Miller, but shall be enforceable against her by the seizure or sale of the lands described in the bill, conveyed to her by her husband through Charles L. Bechtel by deed bearing date April 6, 1871.