## George Luckenbach's Estate. Appeal of Anna L. Luckenbach et al.

*Executors and administrators—Legacies charged on land—Sale—Act of February* 24, 1834.

An executor has nothing to do with legacies expressly charged on land, either primarily, or as part of the residuary estate of testator, and such legacies can only be enforced in the orphans' court by the legatee.

Testator gave a dwelling house to his wife for life, but directed that if it should prove that she should find it necessary or more convenient to make sale thereof, for her maintenance and well-keeping, his executor should sell the house and invest the proceeds, the interest of which, and the capital if necessary, to be used for the maintenance of the widow, and whatever should remain of his estate after the death of the widow, to be left to his three children, share and share alike. After testator's death his son moved into the house, and the widow lived with him, being supported by the son. Several years after testator's death a contract was entered into between the son and his mother by which she agreed to pay him a certain amount per week from the death of her husband for maintenance, and to make no charge for the rent of the property. Three years after this she gave her son an order on the executor of her husband to sell the property, which order she afterwards revoked. The executor proceeded to make sale, but his attempt to sell was resisted by the other children, and pending the litigation which ensued the mother died. Subsequently the son recovered a judgment against his mother's administrator for the amount due him for her support. On this judgment he issued attachment execution against the administrator of his mother and also against the executor of his father and summoned them as garnishees. The latter made no defense, and judgment was taken against him. The son then presented a petition to the orphans' court averring his substitution to the rights of his mother as legatee, and praying for a sale of the homestead property to satisfy his judgment. *Held*, (1) that the son was not so substituted to his mother's rights as to make him a legatee within the meaning of the act of Feb. 24, 1834, P. L. 73; (2) inasmuch as the residuary legatees were not parties to the attachment proceedings against the executor, they were not concluded by the judgment in those proceedings; (3) the residuary legatees having a right to be heard in equity, before equity appropriates their estate to creditors, the orphans' court had no jurisdiction to order the sale of the property.

Argued March 13, 1895. Appeal No. 229, Jan. T., 1895, by Anna L. Luckenbach et al., from decree of O. C. Northampton Co., directing sale of real estate. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Reversed.

Petition for the sale of real estate.

All the material facts appear by the opinion of the Supreme Court except the following provision of the will:

"I give and bequeath unto my grand-daughter Georgianna, the daughter of my deceased son, George H., the sum of fifty dollars.

"And furthermore, it is my will and desire and I hereby do order and direct that all and whatsoever is left and remaining after the decease of my beloved wife shall be equally divided, share and share alike, between my three children, Edwin R., Julius B., and Maria, my daughter, and in case either of my children should die without leaving issue, then, and in that case, the survivors and their heirs shall inherit their deceased brother or sister's share in equal parts."

SCHUYLER, P. J., filed the following opinion:

"Where a testator charges the interest of a fund with the support of his widow with power to use the corpus of the fund if the interest is insufficient, and the widow, without exhausting the provision made for her, incurs liabilities for her support and dies, the person furnishing the support has an 'equitable claim' on the fund which may be enforced in the orphans' court. Such is the doctrine of Reck's Appeal, 78 Pa. 432, and the reasoning of the Supreme Court applies equally to a case where the thing charged with the widow's support is real estate. The petitioner, therefore, has a proper claim and is in the proper forum.

"Has he adopted the proper remedy? His petition is under the act of assembly providing a remedy for the collection of legacies charged upon land. The provision for the widow in the case at bar is such a legacy: Marcy's Est., 22 Pa. 140. [According to the strict letter of the act, however, only the legatee can apply for its benefits. Here the legatee is dead, and her administratrix is hostile to the petitioner's claim. To bridge over this difficulty the petitioner obtained judgment against the administratrix, and issued an attachment execution against the executor of the husband as garnishee under which he obtained judgment for the full amount of his claim. Then comes in the familiar act of assembly which gives the attaching creditor the same rights as his debtor.] [1]

"The whole proceeding is certainly ingenious, but it seems

to be strictly within legal limits, and to give the petitioner a full standing in court. If there are difficulties they are purely technical. Kindred difficulties existed in Reck's Appeal, but they were brushed aside by the Supreme Court to prevent a failure of justice. The claim of the petitioner we are bound to assume is a meritorious one. The course he has adopted for its collection, if not the only, appears to be the most feasible one open to him. He should not be turned out of court, therefore, on mere technical grounds, if any such exist.

" [Reck's Appeal is also authority for the position that a previous demand by the widow for the corpus was unnecessary.] [4] [But even if the law were otherwise, we think that on a fair construction of the pleadings, and we have nothing else before us, it sufficiently appears that such demand was made and never revoked.] [2]

" [1894, October 29. Let the order issue as prayed for upon security being given by the executor, and upon such terms as may be hereafter prescribed.] " [3]

*Errors assigned* were (1–4) portions of opinion as above.

*William C. Loos*, for appellants.—Only the legatee is entitled to proceed under the provisions of the statute : Field's App., 36 Pa. 11 ; Littleton's App., 93 Pa. 181 ; Baker's App., 59 Pa. 315.

A final decree cannot be entered by the court until after the facts are determined in the orderly and regular course of justice : Gross v. Wieand, 151 Pa. 639.

In Kling v. Hummer, 2 P. & W. 349, it is expressly decided that the widow's consent made necessary by the terms of the will is revocable.

The authority of the agent is generally revocable : Story on Agency, sec. 476 ; Yerkes's App., 99 Pa. 401.

No question of the statute of frauds is involved in the revocation of the widow's consent, and therefore it may be by parol or otherwise : Hamlin v. Thomas, 24 W. N. C. 4 ; Gast v. Porter, 13 Pa. 533 ; Styer v. Freas, 15 Pa. 339 ; Brown & Sterrett's App., 27 Pa. 62.

*W. E. Doster*, for appellee.—Julius stands in the place of the

legatee by virtue of the attachment execution to get whatever
she could have got had she lived, or her administrator could
have got after her death: Reck's App., 78 Pa. 432; Marcy's
Est., 22 Pa. 140; act of Feb. 24, 1834, sec. 59, P. L. 84; act
of April 13, 1843, P. L. 235; Colgan's Est., 160 Pa. 140; Eris-
man v. Directors of the Poor, 47 Pa. 509; Eichelberger's Est.,
135 Pa. 160; Shubart's App., 154 Pa. 230.

Trusts are imperative, and if the trust is to be effected by
the execution of a power, equity will not allow it to fail:
Miller v. Meech, 8 Pa. 417; Lightner's App., 82 Pa. 301;
Smyth v. Craig, 3 W. & S. 14; Kemp's Est., 2 Woodward, 428.

The effect of the attachment is to transfer to the attaching
creditor the right which the administrator of Maria had to col-
lect of the executor and pay over to Julius the maintenance
legacy: Strong's Executor v. Bass, 35 Pa. 333.

OPINION BY MR. JUSTICE DEAN, October 7, 1895:

In 1878 George Luckenbach died, leaving a will in which
was this provision:

"Item: I give and bequeath unto my wife, the use and
occupation of my dwelling house in Market street, in the Bor-
ough of Bethlehem, during her natural life, but, if it should
prove at any time, during her life, that she should find it neces-
sary or more convenient to make sale thereof, for her mainte-
nance and well-keeping, in such case, my Executor shall have
full power to make sale of the above named dwelling house,
and to give legal deed and title thereto, and the proceeds of
such sale shall be safely invested and loaned out on Bond and
Mortgage, and the interest accruing therefrom, and the capital,
if necessary, to be employed and used for the benefit, mainte-
nance, and comfort of my wife, during her lifetime, and after
her decease all the furniture in her possession shall be sold to
the best advantage."

The testator left three children, Edwin, Maria, and Julius.
After his father's death, Julius moved into the homestead, and
his mother lived with him until her death in October, 1892,
the son supporting her; ten years after the father's death, a
contract was entered into between him and his mother, by
which she agreed to pay him $4.50 per week for her mainte-
nance from the death of her husband, and no charge to be made

for rent of the property. Three years after this, she gave to him an order on the executor of her husband, requesting him to make sale of the property, under the provision of the will just cited; this request she afterwards revoked. The executor proceeded to make sale; the other children, by proceedings in court, resisted the sale; during the pendency of the litigation, the mother died, and Julius brought suit in the common pleas against her administrator for the amount due him under the contract for support, and recovered judgment for $3,358.75. On this judgment, he issued attachment execution against the administrator of Maria Luckenbach, and also against the executor of George Luckenbach, and summoned them as garnishees; the latter made no defense, and he took judgment against him. Julius then presented his petition to the orphans' court, setting out the facts, in substance, as we have stated them, averring as a legal conclusion his substitution, by reason of his judgment against his mother's administrator, and the judgment in the attachment against her husband's executor, to all the rights of his mother under the father's will, and praying for a sale of the homestead property to satisfy the debt due him for her support. The other parties interested in the estate, these appellants, denied some of the averments of the petition, but especially that in which Julius claimed a substitution to his mother's right as a legatee under his father's will; they, also, denied any jurisdiction in the orphans' court to order a sale and to apply the principal sum realized to the payment of Julius' judgment.

The court, being of opinion, though apparently not without some misgivings, that under the act of 24th of February, 1834, the proceeding could be sustained, made the decree that an order issue for the sale of the property as prayed for. From this decree the appeal before us is taken. As the whole case hinges on whether the court below had jurisdiction to make the order, we shall consider only the assignment of error bearing on that question.

The section of the act of assembly which the court thought conferred jurisdiction is as follows:

" When a legacy is or shall be hereafter charged upon, or payable out of real estate, it shall be lawful for the legatee to apply, by bill or petition, to the orphans' court having juris-

diction of the accounts of the executor of the will by which such legacy was bequeathed; whereupon such court, having caused due notice to be given to such executor, and to the devisee or heir, as the case may be, of the real estate charged with such legacy, and to such other persons interested in the estate, as justice may require, may proceed, according to equity to make such decree or order touching the payment of the legacy out of such real estate, as may be requisite and just."

The act says, "It shall be lawful for the legatee to apply by bill or petition to the orphans' court, . . . . to make such order touching the payment of the legacy out of such real estate, as may be requisite and just." The legatees themselves can alone adopt this statutory remedy. This is decided in Field's Appeal, 36 Pa. 11. While the point is not discussed at length in the opinion, it is directly decided in this language :—"For deficiencies, the legatees must proceed themselves against the devisees, or their assigns, whose land is charged with the payment. We know of no law authorizing the executors to attend to this duty." And for the decision, LOWRIE, J., cites Conard's Appeal, 33 Pa. 47, which holds that an executor has nothing to do with legacies expressly charged on land, either primarily, or as part of the residuary estate of testator, and that such legacies can only be enforced in the orphans' court by the legatee. The appellant in Field's Appeal directly raised the question of jurisdiction on a construction of the act of 1832, and his contention by the decision was sustained. To the same effect are Littleton's Appeal, 93 Pa. 181, and Baker's Appeal, 59 Pa. 315. Was then Julius in any legal sense of the word, a legatee? On the face of the record he was simply a judgment creditor of his mother. True, by inquiring into the cause of action, we discover that his claim against the mother, the legatee, arose from supporting her, and that as a legatee she was entitled to support if she considered it necessary, out of a sale of this property; but that was only on a contingency happening during her life. The will says :—"If it should prove at any time during her life, that she should find it necessary or more convenient to make sale thereof, for her maintenance and well-keeping, in such case my executor shall have full power to make sale thereof." Under this power, the widow requested the executor to make sale, and then revoked

the request; while her power to revoke was in dispute, as an incident to the litigation following the executor's attempt to sell, she died. Her standing as a suitor legatee, in either event, whether by the revocation or her death, with the property unsold, ended; the land passed to the residuary devisees, and left Julius in the position of a creditor of his mother, who in her lifetime was a legatee. No right of hers, as legatee, passed to Julius, from the mere fact that she was his debtor, which would constitute him a legatee. Whatever may be his remedy against the land in the possession of the residuary legatees for the recovery of his debt, it is not by a special proceeding under a statute which necessarily excludes all but legatees.

But, it is argued, that notwithstanding Julius is not nominally a legatee, and the judgment, of itself, gives him no standing to maintain this proceeding, yet, having issued an attachment against the executor of the husband, and having obtained judgment against him as garnishee, under the authority of Reck's Appeal, 78 Pa. 432, in equity, he stands in the position of a legatee by virtue of the attachment. But that case was adjudged upon a construction of that will alone, and it was held, in equity, the creditor was entitled to come in on the fund in the hands of the executor for distribution. The important facts alleged in this answer, which would determine the equities of the parties, were not passed on in that case; here, it is averred : 1. On the interpretation of the will there is no power of sale in the executor, if it be not executed on an unrevoked request by the beneficiary in her lifetime. 2. That there is collusion between the creditor and the executor. As the residuary legatees were not parties to the attachment proceedings against the executor, they are not concluded by the judgment in that proceeding; the executor did not represent them, and made no defense; they have a right to be heard in equity, before equity appropriates their estate to creditors by virtue of an attachment to which they were not parties. The error pervading the case, it seems to us, is in treating the alleged collusive proceedings at law in the common pleas, between the creditor and the executor, as determining the rights in equity of the residuary legatees to their father's estate the same as if there had been a distribution, with notice to all parties, in such an equity tribunal as the orphans' court. There never has been such oppor-

tunity for hearing to these residuary legatees. We are, therefore, of opinion the orphans' court had no jurisdiction to order the sale of the homestead property on this petition, and the decree is reversed, the costs to be paid by appellee.