Opinion by
 

 Rhodes, J.,
 

 This is a partition proceeding begun by a bill in equity. Some of defendants answered; as to others judgment pro confesso was entered. A decree for partition referred the matter to a master. To the master’s report exceptions were filed by plaintiffs and defendants. Defendants’ exceptions in so far as they related to an accounting for rents were sustained, and the report returned to the master for alteration and correction with respect to such accounting. Exceptions to the master’s supplemental report were dismissed, and the report approved by the court below. Plaintiffs have appealed from the final order.
 

 The facts are not in dispute.
 

 Mary Ann Deppisch died testate on September 11, 1926, seized of the real estate which is the subject of the present proceedings in partition. Surviving her as her heirs at law were her husband, John Deppisch, and the defendants, Margaret Beiter and Mathilda Rooney, sisters, and Mary Beiter Kirk and John Beiter, children of a deceased brother. In her last will and testament, duly probated, she provided for pecuniary legacies of $1,000 each to two churches, and for the erection of a gravestone at a cost of not less than $300. The residue of her estate, real and personal, she devised and bequeathed to her husband who was designated as her executor. Letters testamentary were granted, and on January 6, 1927, John Deppisch, as executor, filed an inventory showing a personal estate of $11. At the same time, and within the statutory period, he filed an election to take against his wife’s will. On August 2, 1927, he paid out of his personal funds $500 to each of the two churches designated in Ms wife’s will as leg
 
 *117
 
 atees, and received from them releases of the legacies, which were recorded. On the same day he also paid with his own funds $160.46 for direct and collateral inheritance taxes. On August 8, 1927, he filed his first and final account which was confirmed absolutely, and which showed that he had personally paid certain debts of his deceased wife, and other expenses. No reimbursement was claimed by or decreed to him for these items, or for the legacies and taxes paid by him. Deppisch occupied the premises from the date of the death of his wife until his own death on June 25, ,1933'. By his last will and testament he directed the sale of his real estate and personalty by his executrix, and, after bequeathing certain 'pecuniary legacies, he gave the residue of his estate to his four daughters, Kate Smith, Margaret Peterson, Pauline Beck, and Mary Franz. Pauline Beck was named executrix. She, together with her husband, filed this bill in equity. Subsequently, the executrix was made a party plaintiff.
 

 Plaintiffs’ bill, filed May 8, 1939, alleged, inter alia, that John Deppisch paid the legacies provided for in the will of Mary Ann Deppisch out of his personal funds, and “mistakenly took releases instead of assignments from the legatees,” and that he paid out of his own funds the inheritance taxes. In addition to the prayer for partition, plaintiffs prayed, inter alia, for an acounting for the sums thus paid, the accounted amount to be charged against defendants’ interests in the real estate sought to be partitioned, or the proceeds thereof, and a like amount credited to the beneficiaries under his will, or those entitled to receive his share of the real estate of his deceased wife.
 

 Defendants, in their answer, joined in the prayer for partition, denied that release of the legacies was a mistake, and asserted, inter alia, that no claim was made or suit filed during the lifetime of Deppisch for the payments made by him. Without designating the aver
 
 *118
 
 ments as “New Matter,”
 
 [1]
 
 defendants asserted that “plaintiff, Pauline Beck, and the other ...... heirs to the real estate of said John Deppisch or one or more of them, have collected or received the rent and income of said real estate of the said Mary Ann Deppisch, or have occupied the same, since the death of John Deppisch on June 25,1933, up to the present time and have not paid these defendants any of the rent and income from said real estate or made any accounting thereof, and these defendants now demand such an accounting of said rents from said real estate.” The court entered a decree for partition, and referred the case to a master. The master reported that the property could not be divided without prejudice to or spoiling the whole, valued it at $2,000, and received a bid from Mary Franz at the valuation. The court then directed that a conveyance be made to her.
 

 The master in his interlocutory report found that Deppisch paid the legatees under the will of Mary Ann Deppisch $500 each “for a full release and discharge,” and concluded that the releases were not assignments, and that the amounts paid for the releases and inheritance taxes could not be claimed against her estate. The net proceeds of the sale of the real estate were awarded in equal portions to the heirs of Mary Ann Deppisch and the estate of John Deppisch respectively. Plaintiffs and defendants filed exceptions. The court in banc dismissed plaintiffs’ exceptions; defendants’ exceptions relating to an accounting of rents were sustained. The case was again referred to the master who found in his supplemental report that Pauline Beck, executrix of the estate of John Deppisch, deceased, was in possession of the real estate from July 18, 1933, to September 19, 1939, that she held possession for herself and the other residuary legatees under the will of John
 
 *119
 
 Deppisch, and that the heirs of Mary Ann Deppisch were entitled to an accounting of the rents received. He made distribution accordingly. Plaintiffs’ exceptions were dismissed by the court in bane, and the master’s account confirmed absolutely.
 

 The assignments of error raise two questions which are the same as were before the court below: (1) Reimbursement for payment for release of legacies and for payment of inheritance taxes, and (2) rental charge.
 

 Appellants’ argument is, in effect, that the estate of John Deppisch is entitled to be subrogated to the rights of the legatees under the will of Mary Ann Deppisch, as Deppisch paid these legacies and the inheritance taxes assessed thereon out of his own funds. We do not agree. So far as the record discloses he voluntarily made these payments. When he elected to take against his wife’s will he became entitled to one-half of her estate as in cases of intestacy. Act of June 7, 1917, P. L. 403, §23 (a), 20 PS §261; Act of June 7, 1917, P. L. 429, §2 (a), as amended, 20 PS §11;
 
 Mitchell’s Estate,
 
 79 Pa. Superior Ct. 208, 209. As the rights of the legatees under the will were subject to the right of the surviving spouse to take against the will
 
 (Cramm’s Estate,
 
 127 Pa. Superior Ct. 446, 452, 193 A. 135, affirmed, 329 Pa. 528, 198 A. 653;
 
 Lonergan’s Estate,
 
 303 Pa. 142, 146, 154 A. 387), the interest that Deppisch received could not be affected by the bequests of the pecuniary legacies to the two churches, which were charged upon, ,and payable out of, the real estate descending to defendants, collateral heirs, as the result of the election of Deppisch to take against the will (Act of June 7, 1917, P. L. 403, ,§17, 20 PS §241;
 
 Forsyth’s Estate,
 
 335 Pa. 281, 6 A. 2d 817). He was therefore under no obligation to pay anything on account of them or on account of collateral inheritance taxes.
 

 Deppisch, as executor, had nothing to do with defendants’ interests in his wife’s real estate
 
 (Kelley’s Estate,
 
 
 *120
 
 297 Pa. 17, 21, 146 A. 260), and, except to discharge the legacies in so far as the funds in his hands may have permitted, he had nothing to do with the legacies charged on the real estate which descended to defendants (Act of June 7, 1917, P. B. 447, §25 (a), as amended by the Act of April 14,1931, P. L. 32, No. 28, §1, 20 PS §652;
 
 Hartzell’s Estate,
 
 178 Pa. 286, 289, 35 A. 1051;
 
 Luckenbach’s Estate,
 
 170 Pa. 586, 591, 33 A. 121). His action must be characterized as that of a volunteer. “A stranger or volunteer, as those terms are used with reference to the subject of subrogation, is one who, in no event resulting from the existing state of affairs, can become liable for the debt, and whose property is not charged with the payment thereof and cannot be sold therefor”: 25 R. C. L. p. 1325.
 

 The court below properly said: “The form of the instruments clearly indicates that the legatees were executing releases and discharges of their claims, and were not making assignments thereof. Neither is there any proof of fraud, accident or mistake in the procuring or execution of these instruments....... In the absence of any other evidence on the subject, the master was right in refusing to charge the real estate with the amounts advanced by Deppisch in payment of the legacies and the inheritance taxes.”
 

 While subrogation is founded on principles of equity and benevolence, it was incumbent upon appellants to show that Deppisch was not a volunteer
 
 (Williamson’s Appeal,
 
 94 Pa. 231, 236), as this doctrine can only be invoked for the protection of one who has paid the debt of another because he has made himself legally liable in connection therewith. Being a volunteer no equity can arise from the transactions calling for his protection.
 
 Lackawanna Trust & Safe Deposit Co. v. Gomeringer,
 
 236 Pa. 179, 188, 84 A. 757. See, also,
 
 Mosier’s Appeal,
 
 56 Pa. 76, 81;
 
 Lohr’s Estate,
 
 132 Pa. Superior Ct. 125, 128, 200 A. 135. “When a mere volunteer discharges the debt of another he is not entitled
 
 *121
 
 to the remedies which the creditor possessed against the debtor:
 
 Cottrell’s Appeal
 
 —Bowers’
 
 Est.,
 
 23 Pa. 294;
 
 Miller’s App.,
 
 119 Pa. 620 [13 A. 504];
 
 Kuhn v. North et al.,
 
 10 S. & R. 399”:
 
 Thompson, to use, v. Griggs,
 
 31 Pa. Superior Ct. 608, at page 612. See, also,
 
 McQuaid et al. v. Sturgeon et al.,
 
 77 Pa. Superior Ct. 441, 447;
 
 Lohr’s Estate,
 
 supra, p. 129. “In
 
 Campbell v. Foster Home Assn.,
 
 163 Pa. 609, Green, J. (p. 636), quotes with approval from Beach on Modern Equity Jurisprudence, sec. 801, as follows: ‘But one who is only a volunteer cannot invoke the aid of subrogation, for such a person can establish no equity. He must have paid upon request or as surety, or under some compulsion' made necessary by the adequate protection of his own right. In such a case instead of creating any right of subrogation, the payment operates as the absolute discharge of the debt so paid. Thus one who discharges an encumbrance upon property which he has no interest in having relieved, is not thereby subrogated to the rights of the holder of the encumbrance.......’ He also quotes from Sheldon on Subrogation, sec. 240, as follows: ‘The doctrine of subrogation is not applied for the mere stranger or volunteer who has paid the debt of another without any assignment or agreement for subrogation, being under no legal obligation to make the payment and not being compelled to do so for the preservation of any rights or property of his own’ ”: In re
 
 Account of Commonwealth Trust Co., Trustee (No. 1),
 
 247 Pa. 508, at page 515, 93 A. 766, at page 768.
 

 If the instruments executed by the legatees to Deppisch were assignments, the transaction would be one of purchase and not payment.
 
 Lackawanna Trust & Safe Deposit Co. v. Gomeringer,
 
 supra, p. 189;
 
 McKerrahan, to use, v. Crawford’s Ex’rs,
 
 59 Pa. 390, 392. The instruments, however, do not purport to assign the legacies, and plainly show that they are releases. The court below so held.
 

 
 *122
 
 Appellants’ third and fourth assignments of error relating to rental charges must be sustained as the court below erred in sustaining defendants’ exceptions to the master’s conclusion that the heirs of Mary Ann Deppisch were not entitled to an accounting for the rents received from the date of the death of John Deppisch, and in directing the master to require such an accounting and to include the amount in his suggested schedule of distribution.
 

 Defendants’ answer to plaintiffs’ bill contains no averment of possession of the real estate in question by anyone to the exclusion of defendants. The decree directing partition of the real estate and appointing a master for that purpose did not attempt to authorize the master to find and adjust the rental value thereof. It made no reference as to who was in possession, and no finding thereto was made by the chancellor. The master, therefore, in his supplemental report, had no authority to find and adjust the rental value or the rentals of the real estate, or pass on an account thereof. See
 
 Lincoln v.
 
 Africa, 228 Pa. 546, 548, 77 A. 918. In
 
 Hoog et al. v.
 
 Diehl, 134 Pa. Superior Ct. 14, 3 A. 2d 187, we held that where a bill in a partition proceeding did not aver possession by the defendant to the exclusion of the plaintiffs, and the decree did not provide for adjustment of rental value between the parties, and the parties did not agree that the master should act as referee for that purpose, the plaintiffs were not entitled to deduction of rental value from the defendant’s distributive share though the chancellor found that the plaintiffs and the defendant each had a one-third interest in the real estate.
 

 Under the common law there could be no recovery by one tenant in common out of possession from his cotenant in possession of a share of the rental value of the property without proof of an agreement to pay the same.
 
 Lipschutz v. Lipschutz,
 
 124 Pa. Superior Ct.
 
 *123
 
 380, 385, 188 A. 556. This was changed by the Act of June 24, 1895, P. L. 237, §1, 68 PS §101. See
 
 Mertz v. Mertz,
 
 139 Pa. Superior Ct. 299, 302, 11 A. 2d 514. This act provides, inter alia, that in case of partition of real estate held in common the parties in possession shall have deducted from their distributive shares of such real estate the rental value thereof to which their cotenant or cotenants not in possession are entitled. This provision, being purely statutory and in derogation of the common law, must be strictly construed.
 
 [2]
 

 Boles’ Estate,
 
 316 Pa. 179, 182, 173 A. 664. Exclusive possession is an essential element for recovery. “Exclusive possession is a prerequisite to the right of the tenant in common not in possession to recover from the tenant in possession his or her proportionate share of the rental value of the real estate for the time such real estate has been in the possession of the other”:
 
 Hoog et al. v. Diehl,
 
 supra, 134 Pa. Superior Ct. 14, at page 19, 3 A. 2d 187, at page 189;
 
 Citizens Deposit & Trust Co. of Sharpsburg v. Citizens Deposit & Trust Co. of Sharpsburg et al.,
 
 136 Pa. Superior Ct. 413, at page 420, 7 A. 2d 519, at page 523. See, also,
 
 Peterson et al. v. McNeely,
 
 125 Pa. Superior Ct. 55, 60, 189 A. 765.
 

 The findings of the chancellor and the decree for partition furnished no basis for the master to inquire into the question of rentals or to attempt to adjust the same between the parties, and there was no actual or implied consent for him to do so. See
 
 Collins et al. v. Coonahan et ux.,
 
 141 Pa. Superior Ct. 219, 224, 14 A. 2d 857.
 

 The schedule of distribution must be corrected by the elimination of all rental charges, and thereafter distribution of the net proceeds of sale shall be made in accordance with the respective interests of the parties entitled thereto after the deduction of costs. From the amount distributable to the estate of John Deppisch,
 
 *124
 
 deceased, there shall be deducted one-half of the costs, and the other half from the distribution to be made to the heirs of Mary Ann Deppisch. With these modifications, the order of the court below approving the report of the master is affirmed.
 

 [1]
 

 See Equity Rule 52.
 

 [2]
 

 See Act of May 28, 1987, P. L. 1019, §58 (8), 46 PS §558.