MASSACHUSETTS BONDING AND INSURANCE COMPANY, a corporation

v.

CAR AND GENERAL INSURANCE CORPORATION, Limited, United States Branch, a corporation.

Civ. A. 19139.

United States District Court
E. D. Pennsylvania.
June 28, 1957.

478

Swartz, Campbell & Henry, Joseph Head, Jr., Philadelphia, Pa., for plaintiff.

Albert C. Gekoski, Philadelphia, Pa., for defendant.

KRAFT, District Judge.

The question for determination under the unusual facts of this case is whether, under Pennsylvania law, an insurer is entitled to recover from a co-insurer of the same risk a proportionate part of the payment made by the former in settlement of a claim for which no suit had been brought against the common insured, when the co-insurer had falsely denied the existence of its coverage.

At the close of the evidence in the trial to the court without a jury, counsel expressly waived the necessity of specific findings of fact under Fed.Rules Civ.Proc., Rule 52(a), 28 U.S.C. The facts now found are thus summarized:

The plaintiff, a Massachusetts corporation, and the defendant, an English corporation, transact business in Philadelphia. Both had entered into insurance contracts with W. Ellis Johnson which were in force on September 29, 1953. Both contracts, inter alia, insured Johnson against liability for personal injuries arising from operation of his motor vehicles. Both covered Johnson's liability for the casualty which gave rise to this controversy. The limitations of liability were $50,000 under plaintiff's policy and $25,000 under defendant's policy. Both contracts contained identical "Other Insurance" clauses which, in pertinent part, provided:

> "If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss. * * *"

On September 29, 1953, Robert Ryan, a 28 year old trainman employed by Reading Company, was seated on the side steps of the locomotive of a moving train in the performance of his duties when one of Johnson's trucks backed into the passing locomotive where the railroad track intersected a driveway upon or immediately adjoining Johnson's property. Ryan suffered very serious injuries and the subsequent amputation of his right leg. At the time of the collision the truck was operated on Johnson's business by one of his employees. The truck driver was negligent in failing to observe the approaching train and in failing to stop or so control the backward motion of the truck as to prevent it from striking the passing locomotive, and this negligence was a proximate cause of the injuries to Ryan, who was free from negligence.

Johnson gave due notice of Ryan's claim to the common agent of both in-

surers and plaintiff thereupon requested defendant's participation in the handling of the claim. The defendant refused to participate in any way. It did not assert that Johnson was not liable or that Ryan's claim was excessive. Rather, on December 8 and again on December 24, 1953, the defendant affirmatively and falsely represented to the plaintiff, in writing, that the insurance policy issued by defendant to Johnson afforded no coverage of Ryan's casualty. The defendant thus falsely represented that it was not a co-insurer; it falsely represented that, respecting this casualty, the "applicable limit of liability stated" in defendant's policy was not, within the meaning of the "Other Insurance" clauses, "valid and collectible insurance" against Johnson's liability and so could not be included in plaintiff's computation of "the total applicable limit of liability of all valid and collectible insurance against such loss" or in plaintiff's determination of plaintiff's liability. In short, defendant falsely stated that any loss arising from Ryan's casualty was solely the responsibility of plaintiff. The defendant then knew or should have known that these representations of non-coverage were false. Nevertheless, it repeated the same false assertions in its answer[1] to the complaint in this suit and continued so to persist until the trial when, required by the court to state specifically why its policy did not insure Johnson, it reluctantly admitted the coverage.

Ryan, without instituting suit, sought to negotiate an amicable settlement with Reading Company and the plaintiff. The negotiations resulted in an agreement whereby, on June 2, 1955, the plaintiff and Reading Company, in equal shares, paid Ryan the total sum of $64,570.55 in full settlement. It is unnecessary, therefore, to determine in this suit whether any negligence of Reading Company was a proximate cause of Ryan's injury. The amount of the settlement was fair and reasonable and this was not disputed by the defendant at the trial. Plaintiff's subsequent demand for a proportionate contribution was refused by defendant.

To plaintiff's suit defendant has interposed several defenses. One, asserted for the first time in this suit, is that Johnson's employee was not negligent and that Ryan's injuries resulted from his own negligence and that of Reading Company. This somewhat untimely defense fails in any event because Johnson's employee was negligent and Ryan was not. A second defense, also claimed for the first time in this suit, is that the settlement with Ryan was not fair and reasonable. This fails because the settlement was fair and reasonable, as indicated by defendant's failure, at trial, to dispute its reasonableness. Another defense is that defendant was not a co-insurer because its policy afforded Johnson no coverage for this casualty. This defense is unavailing; defendant was a co-insurer, as its policy establishes and as defendant, at the trial, belatedly conceded.

The last line of defense, not raised, however, by defendant's answer, is that plaintiff's right to contribution is barred because (1) the existence and extent of Johnson's liability to Ryan was not established by any final judgment and (2) plaintiff, in paying Ryan more than plaintiff's proportionate share of the loss without defendant's approval, was acting as a volunteer.

Counsel cite and we find no Pennsylvania case decisive of these precise questions. Some jurisdictions permit recovery upon the theory that the payor insurer is, by the terms of its own policy, subrogee of the insured and thus enabled to recover from the disclaiming co-insurer.[2] Other jurisdictions, however, re-

---

1. Filed July 14, 1955.

2. United States Guarantee Co. v. Liberty Mut. Ins. Co., 1943, 244 Wis. 317, 12 N.W.2d 59, 150 A.L.R. 632; Detroit Auto. Inter-Insurance Exchange v. Detroit Mut. Ins. Co., 1953, 337 Mich. 50, 59 N.W.2d 80; Commercial Standard Ins. Co. v. American Employers Ins. Co., 6 Cir., 1954, 209 F.2d 60. See also American Employers Insurance Co. v. Maryland Casualty Co., 4 Cir., 1954, 218 F.2d 335.

gard contribution as a sounder basis on which to rest apportionment among co-insurers.[3]

■ It is settled in Pennsylvania, however, that when an insurer wrongfully denies coverage to its insured, the latter may settle his liability without litigation and without the insurer's consent and recover from the insurer the amount of a fair, reasonable settlement. Murphy & Co. v. Manufacturers' Casualty Co., 1926, 89 Pa.Super. 281; American Mut. Liability Ins. Co. v. Buckley & Co., Inc., 3 Cir., 1941, 117 F.2d 845.[4] In the former case the insurer asserted as its defense that express policy provisions provided that the insured should not settle any claim without the insurer's prior written consent and that no action should lie against the insurer to recover for any loss under the policy unless brought after the amount of such loss had been rendered certain by final judgment against the insured after trial or by agreement between the parties with the insurer's written consent. The insurer contended that the settlement by its insured in contravention of these policy conditions relieved the insurer of all liability. The court held that the policy conditions were predicated on the willingness of the insurer to perform its agreement to defend any suit against the insured and that, when the insurer unequivocally repudiated all liability under the policy, it was in no position to insist that the insured do nothing until an action was brought against the insured and then, instead of making a settlement advantageous both to insurer and insured, press the suit against it to final judgment. The court stated:

"The insurance company's initial repudiation of the contract in denying liability under the policy relieved the insured of strict performance of those provisions intended for the protection of the insurer only if it recognized the liability and assumed

charge of the matters relating to the claim." 89 Pa.Super. at page 286.

The court further said that the insurer was not absolutely bound by the settlement made by its insured and could have defended on the grounds that the person injured had no enforceable claim against its insured or that the amount paid such person in settlement was excessive, but that, since the insurer interposed neither defense, the court must assume that the insured was liable to the injured person and that the settlement was fair and reasonable.

■ In the instant case the defendant, by its answer, raised both these defenses which, upon the facts found, are without merit. The present suit is by cne co-insurer against another, rather than by an insured against its insurer, but there is no sound reason why the principles declared in the Murphy case should not be applied between co-insurers of the same risk. Thus, when this defendant unequivocally repudiated all liability as a co-insurer it was in no position to insist that this plaintiff do nothing until an action was brought against the insured and then, in lieu of making a settlement advantageous to both co-insurers, press the case against the insured to final judgment. The defendant's wrongful abdication of its status and responsibilities as co-insurer put the plaintiff in the place of both co-insurers with the rights of both. To hold otherwise would permit a co-insurer which falsely disavowed liability to enforce and benefit from the rights of a co-insurer and at the same time to escape all correlative duties. The protection which law and equity afford a co-insurer is available only to a co-insurer which recognizes its liability and participates in assuming charge of the matters relating to the claim involving its insured and its co-insurer. If the defendant had performed its obligation, it would have joined in the negotiations for settlement or, disapprov-

3. Kenner v. Century Indemnity Co., 1946, 320 Mass. 6, 67 N.E.2d 769, 165 A.L.R. 1463; Queen Ins. Co. of America v. Meyer Milling Co., 8 Cir., 1930, 43 F.2d 885.

4. See also St. Louis Dressed Beef Co. v. Maryland Casualty Co., 1906, 201 U.S. 173, 26 S.Ct. 400, 50 L.Ed. 712.

ing settlement, would have joined in the defense of any suit against Johnson; it would not have thrust sole responsibility upon the plaintiff. When the defendant falsely disclaimed and refused to undertake or perform its obligations it lost its rights to complain that the plaintiff undertook the obligations of both in the common, as well as its own, interest. Certainly the fact that the existence and extent of Johnson's liability to Ryan was not determined by a final judgment in a suit by Ryan against Johnson does the defendant no injustice when, as here, after the defendant is accorded full hearing, it is judicially determined that Johnson was liable and that the amount paid Ryan in settlement was fair and reasonable. Defendant had no contract with plaintiff which entitled the defendant to have the existence and extent of Johnson's liability determined in a particular forum or in a particular suit.

Defendant relies strongly upon Pasquinelli v. Reed, 1954, 174 Pa.Super. 566, 102 A.2d 219, which, on analysis, fails to support its contention. There, the insurer, having paid a judgment obtained by a wife-plaintiff against its insured, petitioned the court, conformably with Pennsylvania procedure, to obtain contribution from the wife's husband, who had been co-plaintiff with the wife in the suit against petitioner's insured. It was determined that the insurer's petition was procedurally incorrect because there had been no verdict or judgment in the wife's suit establishing the liability of the co-plaintiff husband to her. The petition assumed, rather than sought to establish, the existence and extent of such liability. The isolated language of that opinion which defendant stresses is:

"Counsel has not cited nor have we discovered a decision *enforcing* contribution against one. whose liability has not been established by a verdict." 174 Pa.Super. at page 569, 102 A.2d at page 220 (emphasis supplied).

The effort there was to enforce, by petition, contribution against an alleged joint tortfeasor whose liability had not been established previously and could not be established in the petition proceeding. The plaintiff's effort here is to establish judicially, through appropriate proceedings, the existence and extent of the liability of the defendant's insured and, if successful in that effort, to establish, further, defendant's liability for contribution.

Capitol Ins. Co. v. Standard Ins. Co., 1954, 102 P.L.J. 80, cited by defendant, is readily distinguishable. In that case, decided by the County Court of Allegheny County upon the pleadings, the court significantly stated:

"Plaintiff's reason for paying $700—the entire loss—without suit, is not revealed in the complaint and amendment thereto." 102 P.L.J. at page 81.

It is clear from the opinion that the defendant co-insurer had not disclaimed coverage, falsely or otherwise, and that plaintiff co-insurer, entirely on its own initiative and without defendant's knowledge or assent, settled the claim without suit and thereafter made demand for contribution.

█ We hold, under the facts of this case, that the absence of a prior final judgment determining the existence and extent of Johnson's liability to Ryan does not bar plaintiff's right to contribution and that the existence and extent of such liability may be determined in this suit.

The defendant having, at the trial, conceded for the first time that it was a co-insurer, now urges that it *was* liable for one-third of Johnson's loss but is relieved of its obligation of contribution because plaintiff, as a volunteer, paid the whole loss rather than its proportionate two-thirds share. When, as here, the defendant's position at trial is completely different from and wholly inconsistent with its earlier position, the rights of the parties must be tested and determined as of the time of plaintiff's payment and not as of the time of trial. If defendant had admitted coverage prior to plaintiff's payment, doubtless this suit would have been unnecessary.

To support its contention defendant relies on certain dictum in American Casualty Co. v. Maryland Casualty Co., D.C. E.D.Pa.1937, 20 F.Supp. 561. In that case, however, the alleged co-insurer validly disclaimed because its policy did not cover the motorcycle involved. Since there was no co-insurance there was no liability for contribution, and the court so held. Moreover, the subsequent dictum affords defendant little support when the facts are examined. One Alonzo had previously sued Claverie, the alleged insured. That suit, in which American Casualty Co. (American) alone defended Claverie, resulted in a judgment for Alonzo against Claverie. American then disclaimed coverage of Claverie who thereupon brought an action against American and, despite its defense of non-coverage, obtained a judgment against it because American was estopped from asserting this defense.[5] American paid the judgment against it and, in turn, sued Maryland Casualty Co. (Maryland), the alleged co-insurer for contribution. On this state of facts the rationale of the dictum was that even if, as American contended, Maryland was liable upon its policy, American was then only liable for one-half the claim and American's failure, in Claverie's suit against it, to interpose the defense of co-insurance to half of Claverie's claim either rendered American a volunteer or constituted, in effect, an admission by American that Maryland was not liable on its policy. In the instant case neither such opportunity nor such failure to interpose a partial defense of co-insurance exists to support the inferences drawn in that dictum. Moreover, in that case there was no false disavowal of coverage by Maryland.

■ It has long been recognized in Pennsylvania that "Contribution is bottomed and fixed on general principles of natural justice and does not spring from contract."[6] In Parker v. Rodgers, 125

Pa.Super. 48, 51, 189 A. 693, 695, the court said:

> "The doctrine of contribution rests on the principle that, when the parties stand in aequali jure, the law requires equality, which is equity, and one of them shall not be obliged to bear a common burden in ease of the rest. * * *"

■ When the plaintiff paid the whole of Johnson's loss the defendant denied to plaintiff that it shared the now-admitted common burden of Johnson's liability. This denial was a false representation to plaintiff that, within the meaning of the "Other Insurance" provisions in both policies, Johnson had no "valid and collectible insurance" with defendant for loss resulting from this casualty. Plaintiff thus was compelled to act on the assumption, as defendant well knew, that the burden was the plaintiff's alone. In so acting the plaintiff decided, wisely, to join with Reading Company in a reasonable settlement before any suit, and to have judicially determined thereafter the truth or falsity of defendant's representation of non-coverage. Faced with this suit for such determination defendant staunchly adhered to falsity until trial and then, forced into reluctant admission of the truth, sought to turn to its own advantage its former falsity by asserting that the very payment which its own misrepresentations obliged constituted the plaintiff a volunteer. Whether the legal principles in the Murphy case, supra, or equitable principles of estoppel are applied, the defendant cannot now be heard to complain of the consequence of its own conduct.

■ Moreover, a "volunteer", under the principle defendant seeks to apply, is a stranger or intermeddler who has no interest to protect and is under no legal or moral obligation to pay under the circumstances. Beck v. Beiter, 1941,

5. Claverie v. American Casualty Co., 4 Cir., 1935, 76 F.2d 570.

6. Dering v. Earl of Winchelsea, 1 Cox 318, quoted with approval in Armstrong County v. Clarion County, 1870, 66 Pa. 218, 221.

146 Pa.Super. 114, 22 A.2d 90; Home Owners' Loan Corp. v. Crouse, 1943, 151 Pa.Super. 259, 30 A.2d 330; Southern Surety Co. v. Commercial Casualty Co., 3 Cir., 1929, 31 F.2d 817. Under the facts we conclude that neither was the plaintiff a volunteer nor may the defendant, by reason of its own conduct, so assert. Judgment as prayed for will be entered for the plaintiff and against the defendant on submission by counsel of an appropriate order.