## Appeal of Christy *et al.*

1. An order awarding an inquest of partition is an interlocutory decree and no appeal lies therefrom, but the decree of confirmation, entered upon the return of the inquest is final and any person interested may appeal from the same. The partition proper is then complete.

2. The return of an inquest in partition should be free from uncertainty or ambiguity, it should clearly show whether the land is appraised as an entirety or as divided into purparts, and if the latter be intended each purpart should be so described in the return that it may be easily identified.

3. The practice of attorneys for petitioners in partition furnishing the inquest with proper instructions and form is one to be commended.

4. In partition, the court has no power in the absence of a severance by a testator, to order the coal and surface to be divided and each appraised separately. Whether the inquest could make such division and appraisement, not decided.

October 12th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

Appeal from the Orphans' Court of *Cambria county:* Of October and November Term 1885, No. 72.

This was an appeal by Gallitzin Christy and N. Burk from a decree of said court, overruling exceptions to, and confirming the return to a writ of partition, and granting a rule on the parties interested in the land partitioned, among whom were appellants, to appear and accept purparts at the appraised value, or to show cause why the same should not be sold.

The facts of the case were as follows; Francis X. Christy died seised of a large body of lands, underlaid with bituminous coal, on or about September 6th, 1876, leaving a will wherein he devised, *inter alia*, to his "daughter Agnes (Burk) the farm on which she now lives, which is to be her share of my

estate, and should the coal be opened on said land, or sold in a body, she, my daughter Agnes, to have an equal share with the other heirs." To his son Gallitzin he devised " the fifty acres of land, including the improvements, where he now lives. The mineral right is reserved. He is to pay, out of his share of the mineral right, his note and store account due F. J. Christy." To his six other children, he bequeathed each an equal share of his estate.

On January 7th, 1884, F. J. Christy presented a petition to the Orphans' Court setting forth the above facts and praying for a partition to and among the parties interested, in accordance with the will and the laws of the Commonwealth, of three tracts of land, to wit:

No. 1. A tract containing one hundred and seventeen acres, more or less, adjoining lands of Roger Bradley's estate and other land now or formerly the estate of said Francis X. Christy, deceased, having thereon erected a two-story frame dwelling house, a barn and other outbuildings; a large portion of which is improved and cleared, and known as the old homestead, or Jacob Burgoon tract.

No. 2. A tract of land situate in said township, bounded by lands of John Hay, John Jones, Hugh McCoy, Abraham White and Daniel Burk, now containing about fifty-three acres and ten perches, more or less, known as the James Collins tract.

No. 3. A tract of land situate in said township, bounded by lands of John Storm, Abraham Whitehead and others, containing about fifty-six acres, more or less, known as the Todd and Christy tract.

On this petition a writ was awarded, an inquest and appraisement were held and returned. Exceptions were filed which the court allowed; the inquisition was set aside and an alias writ awarded. Subsequently the original petition was amended, by leave of the court, (1.) By adding the names of the heirs of Agnes Burk. (2.) " That the petition, and inquest to be issued thereon, be made to include and require the sheriff and jury of inquest to appraise and value the coal in the land described in the petition separately and apart from the land and surface rights of the said land." (3.) To include a tract of 75 acres, more or less, of which F. X. Christy sold the surface to A. and W. Christy.

The alias writ then issued, and the return to the same was set aside for want of notice to some of the parties interested, and a pluries writ was awarded. The return to this writ was that the property could not be divided without " spoiling the whole thereof " and the following valuation was made:

[Christy's Appeal.]

| 117 acres | No. 1 | coal | $1,433.00 | No. 1 surface, | $2,478.00 |
|---|---|---|---|---|---|
| 53 " | No. 2 | " | 3,457.00 | No. 2 surface, | 865.00 |
| 56 " | No. 3 | " | 982.00 | No. 3 surface, | 1,073.00 |
| 75 " | No. 4 | " | 1,265.00 | | |
| 88 " | No. 5 | " | 1,364.00 | | |
| | No. 6 | | | | |
| | No. 7 | | | | |
| | No. 8 | | | | |
| | No. 9 | | Total, $12,917.00 | | |
| | No. 10 | | | | |

To this return the following exceptions, *inter alia* were filed: (1.) The proceedings are irregular and not including all the lands and real estate of the decedent. (2, 3.) The testator, by his will, separated the coal in his lands from the land itself, and the court has no jurisdiction in partition without regard to the provisions of the will. (4.) The order of the court to appraise the coal separate from the land was without authority of law. (5.) The amendment of August 4th, 1884, to the petition was irregularly allowed. (6.) The coal is appraised in one more tract of land than is named in the petition, which could not be done without notice to the heirs.

These exceptions were overruled, the inquisition was confirmed and a rule was granted upon the heirs to appear and accept the same at the above value or show cause why the same should not be sold. From this decree respondents took this appeal, assigning for error the above action of the court.

In the Supreme Court a motion was made on behalf of the appellees to quash the appeal on the ground that the decree of the court below was not a definitive decree.

*Samuel S. Blair* (*William H. Sechler* with him), for appellants, upon the motion to quash the appeal, cited: Rex *v.* Rex, 3 S. & R., 533; Gesell's Appeal, 3 Nor., 238.

The return of the inquest should have been set aside because it is ambiguous and obscure. The original petition describes three tracts: No. 1, homestead, 117 acres; No. 2, James Collins tract, 53 acres; No. 3, Todd and Christy tract, 56 acres. Leave was given to amend by adding the coal in 75 acres of the Richard Whitehead tract, east of Clearfield creek. The pluries order on which the inquisition in question was returned includes only these four parcels, and yet the inquest returns an appraisement of a fifth parcel not mentioned either in the petition as amended or in the order, viz: "Eighty-eight acres, No. 5, coal, $1,364." Such a description of land in a deed would pass no title. The coal was separated from the land and the intention of the testator was that it

should be sold, hence a sale should be so ordered, in order that the intention of the testator be carried out.

*George M. Reade*, for appellees.—This was but an interlocutory decree and hence no appeal lies from it : Act March 29th, 1832, (P. L., 213) Robinson *v.* Glancy, 19 P. F. S., 89: Hess's Appeal, 1 Watts, 255; Mitchell's Appeal,. 10 P. F. S., 502.

There was no error in having the land and coal appraised separately ; this is of great importance to the parties, in order that they may realize the full value of the underlying mineral, as well as of the surface at the same time: Stoughton *v.* Leigh, 1 Taunt., 402; Caldwell *v.* Fulton, 7 Casey, 488.

The case of Rex *v.* Rex, 3 S. & R. 533, cited by the appellants, was decided under the Act of 1794, and has not been followed since the revision of 1832.

Mr. Justice TRUNKEY delivered the opinion of the court, October 25, 1885.

Any person aggrieved by a definitive decree of the Orphans' Court may appeal to the Supreme Court. Much difference of opinion has existed as to what shall be deemed a definitive decree, and some of the decisions touching the point are irreconcilable. In Hess's Appeal, 1 Watts, 255, it was held that an order of sale for payment of debts is a definitive decree, but that decision was overruled by the late case of Snodgrass's Appeal, 96 Pa. St., 420. Chief Justice SHARSWOOD remarked that the conclusion in the latter case harmonizes entirely with Gesell's Appeal, 84 Id., 238, where it was ruled that an order awarding an inquest of partition is an interlocutory decree, and no appeal lies therefrom ; and no dissent or qualification was expressed with regard to any dictum in that case. The question decided in Gesell's Appeal is, that an order awarding an inquest of partition is an interlocutory decree; and the present Chief Justice sharply pointed the distinction between such order and the decree to be made on the report of the inquest when it comes up for confirmation, saying of the latter, " Objections to jurisdiction, to the alleged rights of the parties, and to the regularity of the proceedings, may all be considered and determined. The decree then made that the partition remain firm and stable forever, is definitive and final. Here then is a resting place. The partition proper is then completed. It precedes any order of sale, or any allotment of the purparts. From this final decree any person aggrieved may appeal. Any person interested can have his alleged grievances adjudicated and the validity of the partition determined before he is required to elect to take a purpart or suffer the property to go to sale."

Three of the judges dissented on the ground that the order awarding an inquest was a definitive decree—there could have been no difference of opinion as to the nature of the decree of confirmation. That the latter is definitive seems to have been conceded heretofore as too plain for question. The motion to quash is denied.

It is the duty of the inquest to make partition of the premises to and among the parties in such manner and in such proportion as they are entitled, if the premises can be so parted and divided without prejudice to or spoiling the whole; and if such estate cannot conveniently be divided into as many shares as there are parties entitled, the inquest shall make a just appraisement of the respective purparts or shares into which they may divide the estate; and if the estate cannot be divided the inquest shall make and return a just appraisement thereof. Here the return is, "that the property described in the said writ cannot be parted and divided without prejudice to or spoiling the whole thereof, and therefore they value and appraise the same as follows." In the appraisement there are eight items; it may be presumed eight parcels of real estate with the value of each. The record shows that the decedent left eight children. If there were so many parcels of land, each to be valued, why not make an appraisment of the respective purparts or shares as directed by section 38 of the Act of 1832? If in fact there were not so many parcels as children, then why not appraise and return each purpart so directed by section 39 of said Act? By returning that the property cannot be divided, some foundation is laid, if the inquisition be approved, for one of the children to claim the whole under the provisions of section 37 of the Act or to demand in case of bidding that the bids shall be for the whole, and not for a parcel. The return of the inquest should be free of uncertainty or ambiguity. Whether the land be appraised as an entirety or be divided into purparts or shares, should clearly appear. If divided, each purpart ought to be so described in the return of the inquest that it may be easily found and identified. Were each tract well described in the petition, and designated by a number, a reference to the tract by its number might be sufficient, but it would be better practice to fully describe it in the return. Here each parcel is designated by the quantity and a number. The first three may be found by corresponding numbers in the petition. No parcel is designated as "No. 4," anywhere, except in the return—the quantity of "No. 4" is the same as in the tract described in the amended petition. One parcel is described in the return thus: "88 acres No. 5. coal." No tract is so described in the petition or will. It may be plausibly argued that "88 acres No. 5 coal" is the same under

[Christy's Appeal.]

the surface of the land which the testator devised to his daughter Agnes. That devise is of the farm where Agnes lived—no other description—it cannot be identified by quantity or number.

This inquisition ought to have been set aside for manifest defects, even had no exceptions been filed. Often the sheriff and jurors are unfamiliar with practice in the Orphans' Court, and with the statutes relative to partitions. The statute provides that a reasonable allowance to the attorney for the petitioners may be made and taxed, as if costs, and in many districts such attorneys furnish the inquest with proper instructions and forms—a practice to be commended. Twice did the court below set aside the inquisition in this case for good cause, and the third inquisition cannot stand; and all the delay and useless expense has occurred for disregard of the practice which is regulated by plain requirements of the statute.

The court ordered that the inquest "appraise and value the coal in the land described in the said petition separately and apart from the land and surface rights of the said land." Where the testator severed the coal from the land over it, or where he only owned the coal in a tract, such coal would be appraised without such special order. The court may not determine whether a tract of land shall be divided into purparts or shares—that is business of the inquest. As well might an order be made to divide a particular tract into specified lots, as to order the coal and surface to be divided, and each appraised separately. That order is erroneous, because the court had no power to make it.

Whether the inquest could lawfully divide the coal and surface of a tract and appraise and return each as a purpart is a question not raised in the record. The learned judge of the Orphans' Court remarked that he knew "of no precedent in partition which separates the surface from the mineral right."

As no evidence has been printed none of the questions discussed at the argument, that cannot be determined by the record, is considered.

> Decree of confirmation of the inquisition is reversed, and the inquisition is set aside, at the costs of the appellees, and record remitted for further proceeding.