# Lincoln *v.* Africa.

*Practice—Equity—Equity rules — Procedure — Partition—Master—Costs.*

1. Since the adoption of the new equity rules, a master in partition merely executes the decree of the court after the rights of the parties have been judicially determined; before a master may be appointed to make partition the court must ascertain the interests and titles of the parties, and enter a decree that partition shall be made.

2. Where a decree for partition is taken pro confesso for want of an answer, and the case is forthwith referred to a master to make the partition, without any prior adjudication, all proceedings after the filing of the original bill will be set aside; and the appellate court in reversing the case will direct the plaintiffs to pay the costs made by them, including the master's fee, and the defendants to pay their own costs.

*Practice—Equity—Partition—Decree—Confirmation—Appeals.*

3. The report of a master returning a scheme of partition must be followed by a decree of confirmation before further proceedings are had. The decree then made is a final decree from which an appeal may be taken.

*Statute of frauds—Parol sale of lands—Tenants in common—Partition.*

4. There can be no valid parol sale of lands among tenants in common possession, as there can be no such delivery of possession as will take the case out of the statute.

5. Where a bill in partition avers a parol sale of the interest of one of the tenants in common, and alleges a reconversion, the bill and the evidence in support of it must fully and specifically show the dates and all the facts relating to the alleged reconversion.

*Statute of frauds—Parol sale of lands—Evidence.*

6. To take a parol contract for the sale of land out of the operation of the statute of frauds, the contract must be distinctly proven, the land must be clearly designated, and open, notorious, and exclusive possession must be taken and maintained, under and in pursuance of the contract.

*Equity—Equity practice—Partition—Amended bill.*

7. Where a plaintiff in a bill in partition takes a decree pro confesso, and subsequently desires to amend the bill or the record, he must serve notice of the amendment upon the defendant personally, or upon an attorney whose appearance has been duly entered upon the record for the defendant.

Argued April 18, 1910. Appeal, No. 168, Jan. T., 1909, by Jane Miller, defendant, from decree of C. P. Huntingdon Co., May T., 1908, No. 148, confirming return of sale in case of J. G. Lincoln and C. H. Glazier v. Lena Africa, J. Stewart Africa, Jane Miller and W. M. Miller. Before BROWN, MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ. Reversed.

Bill in equity for partition. Before WOODS, P. J.
The opinion of the Supreme Court states the case.

*Error assigned* was decree confirming return of sale by the master.

*L. H. Beers* and *Howard L. Henderson,* for appellant.

*R. W. Williamson* and *J. F. Schock,* with them *J. R. & W. B. Simpson,* for appellees.

OPINION BY MR. JUSTICE MOSCHZISKER, July 1, 1910:
The appeal in this case brings up the record of a partition proceeding in equity. Several errors are presented, at least one of which is fundamental. Instead of a trial

before a referee, or in open court, as required by the equity rules, this case was practically tried before a master in chancery, an office expressly abolished by the new rules. In Palethorp v. Palethorp, 184 Pa. 585, under similar circumstances, we said: "The fact is brought to our attention by an examination of this record that the equity rules have been utterly disregarded, and that there has been no trial had in this case. We cannot consider a decree made under such circumstances as an adjudication upon any question to which it relates. The appointment of the master was a simple nullity. The proceedings before him were coram non judice, and therefore a nullity. The decree resting upon his report has absolutely nothing to support it, and it is therefore a nullity. . . . We have but one thing to do in this case, and that is by no means a pleasant one. We must treat this record as it actually is, as an incurable series of mistakes, and set aside all that has been done since the appointment of the master, by him, or by the judge of the court below resting upon or in any manner relating to what the master has done." These words are appropriate and applicable to the present case.

In a partition proceeding in equity, if the case is not sent to a referee under rule 69, the equity rules require that the court, and not a master, shall find all the relevant facts concerning the properties involved and the interests of the various parties, and that an adjudication shall be filed in the usual form containing these findings and the conclusions of law thereon, with a decree for partition: Palethorp v. Palethorp, supra. The proper procedure is shown in Palethorp v. Palethorp, 194 Pa. 408. Since the adoption of the new rules, the master merely executes the decree of the court after the rights of the parties have been judicially determined; before a master may be appointed to make partition the court must ascertain the interests and titles of the parties, and enter a decree that partition be made. The decree for partition must rest upon the findings and conclusions of the court;

after such an adjudication and only thereafter, the case may be sent to a master: Equity Rule 60; Act of July 7, 1885, P. L. 257, sec. 2. Here there was no hearing as required by the equity rules, and no adjudication was filed. A decree for partition was taken pro confesso for want of an answer, and the case was forthwith referred to a master to make the partition. The fact that a bill is taken pro confesso is no reason for a departure from the rules requiring an adjudication in the usual form before the entry of the decree for partition and the appointment of the master. When a decree is taken pro confesso the court may make its findings from the averments of the bill, if they are sufficient; and if not sufficient, then rule 29 provides that "the plaintiff, if he requires any discovery or answer to enable him to obtain a proper decree shall be entitled to process of attachment against the defendant to compel an answer." The averments in the present bill were in several particulars insufficient to justify the requisite findings to sustain a decree for partition.

The master held a meeting at which the appellants were not present, and proceeded to make findings of fact and reach conclusions of law from the insufficient averments of the bill. In his report he finds that the properties embraced in the bill had been owned by Andrew Hefner; that at his death Hefner directed by will that his real estate be sold by his executors and the proceeds divided among his children; that by mutual consent and agreement among the beneficiaries under this will the real estate was accepted and held by them as tenants in common as if there had been no direction to sell, and "thereby each of said beneficiaries became entitled to and was the holder of an undivided one-sixth interest in said lands;" that the appellant, Jane Miller, intermarried with William Miller; that she by a parol agreement sold her undivided one-sixth interest to certain of her brothers and sisters for a price only part of which had been paid; that this interest had since become vested by purchase in the plaintiffs, the appellees, and Jane Miller was simply the holder of an

equitable interest under which she was entitled to receive from the plaintiffs the unascertained balance of the purchase money. The bill originally filed contained an averment that the parol sale was made in the year 1886, but an amended bill striking out this date was subsequently filed by leave of court. The record does not disclose when the election to reconvert the interests of the parties into real estate occurred, nor does it show the date of the marriage of Jane Miller, or the date of the parol sale; and there is no sufficient averment of exclusive possession taken under and in pursuance of the alleged parol contract of sale. "The rule is well settled, that to take a parol contract for the sale of land out of the operation of the Statute of Frauds, the contract must be distinctly proven, the land must be clearly designated, and open, notorious, and exclusive possession must be taken and maintained, under and in pursuance of the contract:" Overmeyer v. Koerner, 81* Pa. 517; Bowers v. Bowers, 95 Pa. 477. It is not clear, but under the averments of the present bill it would appear that at the time of the alleged parol sale all the heirs had a common possession of the lands in question. "There can be no valid parol sale of lands among tenants in common possession, as there can be no such delivery of possession as will take the case out of the statute:" Spencer and Newbold's Appeal, 80 Pa. 317; Hill v. Meyers, 43 Pa. 170; McCormick's Appeal, 57 Pa. 54; Bowers v. Bowers, supra. If the parol sale took place after the marriage of Jane Miller and after the reconversion of the property into real estate, it might not only be held void under the statute of frauds, but also for want of the joinder of her husband. Therefore full and specific averments including dates are most material. Again, the record does not show any sufficient averment in the bill or evidence offered, to prove the fact of the alleged election upon which the finding as to the reconversion rests. The court below states in one of its opinions: "It developed that among the records of the Huntingdon county orphans' court a paper was on file signed by all

the parties and showing this alleged election." If that record is depended upon for the purpose of proof it should be produced, as the fact of the reconversion is most material to the right of partition. We refer to these matters, so that when the record goes back to the court below, as it must, the bill may be amended, or if necessary proper evidence may be brought before the chancellor on the points involved.

The record shows that the amended bill was filed about four months after the original bill had been taken pro confesso and on the very day that the master filed his report of partition. Apparently no notice of the motion to amend was served upon the appellant, and the service of the amended bill was accepted by T. W. Myton, Esq., as her attorney. There is nothing upon the record to show that Mr. Myton ever entered his appearance as attorney for Mrs. Miller, and she denies his authority to bind her by the acceptance of service. If the plaintiffs desired to rest upon the decree pro confesso, they should not have filed the amended bill but should have taken proper proceedings to amend the original record; and if they desired to fix the appellant with notice of the amendment, the service should have been a personal one or should have been made upon an attorney whose appearance was duly entered upon the record.

We cannot sustain the contention that the appeal taken March 26, 1909, was not in time. The decree of September 21, 1908, was only nisi, and no attempt was made to enter a definitive decree on the report of the master until November 4, 1908. The report of the master returning a scheme of partition is like the return of the inquest in the orphans' court, and must be followed by a decree of confirmation before further proceedings are had. "The decree then made . . . . is definitive and final. . . . . It precedes any order of sale or any allotment of the purparts. From this final decree any person aggrieved may appeal:" Christy's Appeal, 110 Pa. 538. In the present instance the court below made the order of sale without

confirming the report of the master, and on December 12, 1908, a final decree was entered confirming this sale.

Since the appellant is entitled to stand upon the firm ground that all the decrees complained of are void for the reason that they rest upon a fatally defective antecedent record, it is not necessary to discuss the various assignments covering the several refusals to permit her to enter a defense on the merits. When this record is again in the court below she will have an opportunity to present her defense if she so desires.

"We were compelled to treat a decree as a nullity because of the violation of the equity rules in the case of the Chester Traction Co. v. P. W. & B. R. R. Co., 180 Pa. 432, and to lay down the rule that where an equity case has been tried in violation of the equity rules of January 15, 1894, the Supreme Court will upon appeal set aside the decree together with all proceedings in the cause after the case was put at issue, . . . . and will direct that each party shall pay its own costs made since the cause was at issue:" Palethorp v. Palethorp, 184 Pa. 585. In the present case, considering all the circumstances as shown by this record, we conclude that the ends of justice will be best served by this order: All the proceedings since the filing of the original bill are set aside, the plaintiffs to pay the costs made by them, including the master's fee, the defendants to pay their own costs. The record is remitted to the court below with a procedendo.