# Lincoln, et al., v. Wakefield, et al., Appellants.

*Equity—Partition—Reconversion of property converted by will —Evidence—Feme covert—Non-joinder of husband—Minor— Guardian's joining without consent of court—Satisfaction—Adjustment of rentals.*

1. Where in a proceeding in partition it appears that all the parties in interest in the real estate in question, which had been converted into personalty by will, had joined in a petition for the discharge of the executor under the will, in whom legal title to the

land was then vested, upon the express ground that they desired
to hold the property as real estate, and that the heirs had subse-
quently joined in a conveyance of part of the land, the evidence
is sufficient to justify the conclusion that a reconversion had been
accomplished. The fact that the parties used the word "desire"
instead of "intend" is immaterial.

2. In such a case it is also immaterial that one of the parties in
interest was feme covert at the time she joined in the agreement
to reconvert executed after the date of the Act of June 3, 1887, P.
L. 332, and that her husband did not join therein; and it is also
immaterial that the guardian of a minor heir joined in the agree-
ment without leave of court, where the court subsequently in
effect approved his act, and particularly where the minor himself,
upon arriving at age did not disaffirm the act, and as a defendant
in the partition proceedings did not join in contesting the validity
of the guardian's joinder in the agreement.

3. Adjustment of the rental value of lands held by tenants in
common under the Act of June 24, 1895, P. L. 237, must take
place as of the date of the final partition of the real estate or dis-
tribution of the proceeds realized from the sale thereof; and since
the office of master in chancery is abolished, the trial court must
make the necessary findings, unless the parties agree that the
master in partition shall act as referee for that purpose.

*Real property—Tenancy in common—Sale—Sale by feme covert
—Evidence—Statute of frauds.*

4. A finding of fact in partition proceedings that a tenant-in-
common of certain real estate, who is feme covert, had sold her
interest to a co-tenant, is not sustained by the evidence where the
oral testimony was neither clear, direct nor specific, where no
actual contract was shown, and the possession and use of the
property after the alleged sale continued just as before; where a
letter relied upon to establish such sale, written several years before
the date of the alleged sale, is vague and indefinite and without
direct reference to the land in question or a sale thereof; and
where the only other writings in relation to the alleged sale were
not sufficient to take the transaction out of the statute of frauds,
or to support a sale by a married woman.

*Appeals—Assignments of error—Unnecessary assignments—
Practice.*

5. Where one assignment of error fairly raises a point, it is
unnecessary and bad practice subsequently to reiterate it in dif-
ferent forms. It is highly improper to file fifty assignments of
error where there are only a few points involved essential to the
determination of the case,

*Appeals—Assignments of error—Statement of questions involved.*

6. All questions covered by assignments of error which the appellant desires considered by the appellate court should be comprehended by or referred to in the appellant's statement of the questions involved.

Argued April 18, 1912. Appeal, No. 146, Jan. T., 1912, by defendants, from decree of C. P. Huntingdon Co., May T., 1908, No. 148, on bill in equity in case of J. G. Lincoln, Julia B. Glazier, Mary E. Glazier, Phœbe A. Glazier and Hattie F. Glazier, executrices of C. H. Glazier, deceased, and R. J. Mattern, assignee for the benefit of the creditors of Julia T. Glazier v. Harry G. Wakefield, Mary Catherine Wakefield, and Merle Stewart Wakefield, whose guardian, ad. litem, is George W. Wright; J. Stewart Africa, Jane Miller, and W. M. Miller, her husband. Before FELL, C. J., MESTREZAT, ELKIN, STEWART and MOSCHZISKER, JJ. Decree modified and affirmed.

Bill in Equity for partition. Before WOODS, P. J.

The opinion of the Supreme Court states the case.

The following letter, purporting to be signed by Jane Miller and William Miller, her husband, was offered in evidence:—

"Dwight, March 28, 1903.

"Dear Brother: I received the deed a few days ago but I have not heard from you to know if you accepted my proposition. If you have, you send notes, $500 in each note, payable as soon as you think you can do it but I want one in a year from May. Have Tommy sign them. Then we will send deed as H. B. Dunn wants it. I will send you what he wrote to me.

"Poscript. John, if it costs anything for me to sign the deed before a notary public, send the cost of it for pay day is a good way off."

The court entered a decree directing partition to be made.

100.LINCOLN, et al., *v.* WAKEFIELD, et al., Appellants.

*Error assigned,* among others, was the decree of the court.

*L. H. Beers* and *Howard L. Henderson,* for appellant. —There was no reconversion: Miller v. Meetch, 8 Pa. 417; Beatty v. Byers, 18 Pa. 105; Mellon v. Reed, 123 Pa. 1; Brownfield v. Mackey, 27 Pa. 320; Woodburn's Est., 138 Pa. 606; White's Est., 23 Pa. Superior Ct. 552; Twaddell's Est., 9 Phila. 316; Rice v. Bixler, 1 Watts & Sergeant 445; Stuck v. Mackey, 4 Watts & Sergeant, 196.

Words in a will, expressive of desire, recommendation, and confidence, are not words of technical, but of common parlance, and are not prima facie sufficient to convert a devise or bequest into a trust: Pennock's Est., 20 Pa. 268; Bowlby v. Thunder, 105 Pa. 173; Hopkins v. Glunt, 111 Pa. 287; Schwab's Est., 22 Pa. C. C. R. 218; Powell's Est., 225 Pa. 518.

The said paper of December 20, 1888, was signed by Jane Miller, a married woman, and not joined in by her husband, consequently, it is fatally defective.

There is nothing in the Acts of April 11, 1848, P. L. 536; June 3, 1887, P. L. 332, or June 8, 1893, P. L. 344, which changes the provisions of the Act of February 24, 1770, 1 Sm. L. 307, requiring a husband to join in the conveyance of a wife's real estate, and requiring the separate examination and acknowledgment of the wife: Bingler v. Bowman, 194 Pa. 210; Baker v. Copenbarger, 15 Ill. 103; Wicker v. Durr, 225 Pa. 305; Real Estate Ins. Co. v. Roop, 132 Pa. 496.

This paper of December 20, 1888, was fatally defective because Jacob Africa, guardian of Lena Africa, joined in the same without authority from the court. He could not change the character of his ward's estate or succession: Davis's App., 60 Pa. 118; Burr v. Sim, 1 Wharton (Pa.) 252; Sears v. Trust Co., 228 Pa. 126; Whitehill v. Wilson, 3 Penrose & Watts 405.

*R. W. Williamson* and *J. F. Schock,* with them *J. R. & W. B. Simpson,* for appellees.—There is neither law nor decision in Pennsylvania requiring an election of heirs to retain real estate as land to be reduced to writing, signed and acknowledged: Brownfield v. Mackey, 27 Pa. 320; Beatty v. Byers, 18 Pa. 105; Mellon v. Reed, 123 Pa. 1; Henderson v. Henderson, 133 Pa. 399.

If the guardian needed authority from the Orphans' Court to join in the election of December 20, 1888, he on the same day obtained it in the approval by the court of the agreement, when the court acted upon it by discharging the executor and ordering the guardian, jointly, with the other parties, to pay the costs of the proceeding.

The interest of a distributee in land converted by a direction to sell is personalty, and may be sold or transferred, prior to an election to take it as land, by parol, notwithstanding the statute of frauds, and may be released or assigned without writing: Mellon v. Reed, 123 Pa. 1; Johnson v. Kite, 26 Pa. C. C. R. 391.

OPINION BY MR. JUSTICE MOSCHZISKER, July 2, 1912:

This is a proceeding in partition on the equity side of the court; when the case was here before (228 Pa. 546), we were obliged to send it back for a retrial. The defendant who entered the former appeal is again the appellant, and the few points essential to a determination of the case are involved in a maze of 50 assignments of error. Before entering upon a discussion of these points, we take occasion to say that the practice of multiplying specifications of error tends to hurt rather than to help the proper consideration of a cause. When one assignment squarely raises a point, it is unnecessary and bad practice subsequently to reiterate it in different forms, as was done in this case. Here we have been obliged to read and digest 55 printed pages, when but comparatively few would have been ample for the purpose of bringing the real issues upon the record.

We shall not attempt to pass upon each of the 50 assignments, but shall take up and determine the essential points which they bring before us.

It is contended that there could be no partition because the real estate in question was converted into personalty by the will of Andrew Heffner. The testator died August 16, 1872, leaving a widow and six children; he appointed executors and directed them to sell his real estate and divide the proceeds. All concede that this was a conversion; but the appellees contend that the parties in interest effected a reconversion of the property in 1888 by formally agreeing to hold the same as real estate. To which the appellant replies that the evidence depended upon was not sufficient to show a reconversion; that she was a married woman and her husband did not join in the alleged agreement to reconvert; further, that another of the heirs was a minor at the time and her guardian had no authority to join in such an agreement. The record shows the facts to have been as follows: On December 8, 1888, Benjamin Heffner, surviving executor under the will of Andrew Heffner, presented a petition to the Orphans' Court praying for his discharge, in which he averred, inter alia, that his accounts were settled to date, and that the only debt of the estate was a mortgage which he had no funds to pay; that the time had come for him to sell the remaining real estate in order to carry out the provisions of the testator's will; but that the heirs were "desirous of retaining the same as real estate in place of personal property as contemplated by said will," and therefore he had no duties to perform. To this paper was attached the following: "We, the undersigned, widow, children, &c., of Andrew Heffner, of the township of Walker, deceased, do hereby join in the petition of Benjamin Heffner, hereto attached, and agree that we desire the real estate mentioned in the will of the said Andrew Heffner to remain unsold, and to be held by us as real estate, and also that the said

Benjamin Heffner, shall be discharged as executor of said will according to the prayer of his petition." This was signed by all parties in interest, including the appellant and the guardian of a minor child of one of the heirs who had died after the decease of the testator. The court granted the prayer of the petition and discharged the executor.

Did the joint execution of this paper serve to work a conversion? "It was competent for the heirs, formally, or by some decisive act to that effect, to take the land in lieu of the money," and thus to reconvert their interests into real estate; Henderson v. Henderson, 133 Pa. 399, 408. Such reconversion could be worked "by acts in pais . . . . . . . . , of such a character as to leave no reasonable doubt of the intent"; Beatty v. Byers, 18 Pa. 105, 108. If the document under consideration expresses any intent, there can be no doubt that it was to hold the property referred to as real estate. It appears that since the time of its execution the heirs generally have treated such property as real estate, and that in 1903, all of them, including the appellant and her husband, joined in a deed for part thereof, which they had sold to one Hamer, and that they had used the purchase money to pay off the mortgage mentioned in the petition for the discharge of the executor. While this conveyance of a part of the testator's real estate might not in itself have been sufficient to work a reconversion of the interests of the heirs in the particular land now in controversy, "it is very evident from the tenor of the deed that the grantors considered themselves as having an interest in the land as land" (Rice v. Bixler, 1 W. & S. 445, 455), and the court below had the right to take cognizance of this, as also of the fact that the purchase money was used to pay off the mortgage on the balance of the property. We are of the opinion that the act of all the heirs in joining in the request for the discharge of the executor, in whom the legal title to the

land was then vested, upon the express ground that they desired to hold the property as real estate, together with their subsequent acts in relation thereto, was sufficient to justify the conclusion that a reconversion had been accomplished.

The fact that in expressing the intent to hold the property as real estate, the heirs used the words "we desire" instead of "we intend," has no particular significance, when we consider the words employed in connection with their context and the circumstances under which they were used. Even in a will, words precatory in form, when plainly used to express an intention, will be construed as mandatory: Stinson's Estate, No. 1, 232 Pa. 218. But we have to consider the appellant's contention that, since she was a married woman at the time she joined in the execution of the paper in which the intent was expressed, her act was of no avail. Some early cases from other jurisdictions (such as Baker v. Copenbarger, 15 Ill. 103, decided in 1853) have been cited to us, to the effect "that it is competent for a feme-covert to elect to take the land instead of the money, but that such an election can only be made under such forms and solemnities as by law are required to enable her to convey her fee." It is to be. noted, however, that these cases were decided at a time when a married woman was "incapable of changing the nature of her estate, because of her being under coverture and unable to contract" (Oldham v. Hughes, 2 Atkyns, 452). With us in 1888, the date of the re-, conversion, while a married woman could not mortgage or sell her real estate unless her husband joined in the deed, generally speaking, she had full power to contract in relation to and "acquire, .... or dispose of property .... in the same manner as if she were a feme-sole" (Act of June 3, 1887, P. L. 332), and an election by those entitled, to take land instead of the money to be derived from its sale, is but "an appropriation of their interests under the will to the

acquisition of the land, as upon a purchase" (Mellon
v. Reed, 123 Pa. 1, 17). Under the circumstances we
do not feel that the coverture of Mrs. Miller would
affect the reconversion.

It is true that the agreement to reconvert was signed
by the guardian of a minor, but that fact cannot
avail this appellant. Although the guardian did not
ask leave to join with the other heirs, nevertheless
when the Orphans' Court acted upon the petition for
the discharge of the executor, it in effect approved the
action of the guardian; again, when the court granted
him leave to join in a subsequent sale of a part of the
real estate, it once more, in effect, approved his act. But
more than this, the minor herself upon arriving at age,
did not disaffirm or raise any objection to the acts of
her guardian; and when included as a defendant in
these proceedings, neither she nor those who represent
her, filed any answer or otherwise joined in the con-
tentions urged by the appellant. On the whole, we
conclude that the evidence was sufficient to justify the
court below in determining that the interests of the
several heirs had been converted into real estate in the
year 1888, and in assuming jurisdiction of the petition
for partition thereof.

The plaintiffs averred and the trial judge found
that the appellant had sold her interest in this real
estate to one of the other heirs in 1906. In the first
place, it is doubtful if the evidence depended upon was
sufficient to prove a sale of any character; it certainly
was not sufficient to support a parol sale of real estate
between tenants in common and by a feme-covert. The
oral testimony was neither clear, direct nor specific,
no actual contract was shown, and the possession and
use of the property after the date of the alleged sale
appears to have continued just about as before. The
letter from the appellant to her brother relied upon by
the plaintiffs was written in 1903; it is vague and in-
definite and makes no direct reference to the land in

question or to a sale of the appellant's interest therein; and the testimony concerning the $450 draft and the $50 in cash sent by the supposed purchaser to the appellant, fails to show that the $500 was in payment of purchase money. This letter and the indorsement of the draft by the appellant and her husband were the only writings in relation to the alleged purchase of Mrs. Miller's interest, and, under the circumstances, they were not sufficient to take the transaction out of the Statute of Frauds or to support a sale of real estate by a married woman. Hence, the learned court below erred in holding that the appellant's share or interest in the property in partition had passed to the plaintiffs, and the assignments which cover the rulings to that effect must be sustained.

In the answer filed by the appellant, she avers, "I deny that the alleged purchasers by the alleged parol sale ever paid to me the sum of $450 on May 31, 1906, and thereafter the sum of $50 more, as purchase money, but on the contrary, I aver that the said sums ...... were paid to me on account of my share of the income, which in equity was due me from the said farm and mill (the real estate in partition) ......, and that there is still due me as an equitable share of the income ...... about $900." The trial judge was asked to make specific findings as to the income and rental value of the land, and that the appellant was entitled to $981.66 thereof; this was refused. We are not prepared to say that the evidence depended upon was sufficient to justify the appellant's requests: and in addition, this was not the proper time to make an adjustment of the profits of the land. The Act of June 24, 1895, P. L. 237, provides: "In all cases in which any real estate is now or shall be hereafter held by two or more persons as tenants in common, ......; in case of partition of such real estate held in common as aforesaid, the parties in possession shall have deducted from their distributive shares of said real estate the rental

value thereof to which their co-tenant or co-tenants are entitled." But the adjustment must take place as of the date of the final partition of the real estate or distribution of the proceeds realized from a sale thereof; and since the office of master in chancery is abolished (Palethorp v. Palethorp, 184 Pa. 585; Lincoln v. Africa, 228 Pa. 546), the trial court must make the necessary findings, unless the parties agree that the master in partition shall act as a referee for that purpose, as provided in the equity rules. At the proper time, if the facts show a present enforceable liability from any of the other tenants in common to the appellant, the court below should ascertain the amounts due and make the adjustment according to the respective legal rights as they may then appear. We shall not undertake to forecast or adjudge those rights at the present time, since the questions are not properly before us; but if they are to be tried, cases shedding light upon most of them can be found in the books. In point of fact, although assigned for error and argued, these questions concerning the adjustment of the profits or rental value of the real estate, are not comprehended in the appellant's statement of the questions involved, as they should have been if her counsel desired them considered: Willock v. Beaver Valley Railroad Co., 229 Pa. 526; Smith v. Lehigh Valley Railroad Co., 232 Pa. 456.

The record is remitted to the court below with directions to modify its orders and decrees so as to include the appellant in the partition, in accordance with the views herein expressed. The costs to be paid by the appellee.