**HARTFORD ACCIDENT AND INDEM-NITY COMPANY, Plaintiff,**

v.

**MOTOR VEHICLE CASUALTY COMPANY, Defendant.**

**Civ. A. No. 83–202 ERIE.**

United States District Court,
W.D. Pennsylvania.

Jan. 4, 1984.

James T. Marnen, Erie, Pa., for plaintiff.

William J. Kelly, Erie, Pa., for defendant.

---

## OPINION AND ORDER

WEBER, District Judge.

On January 7, 1979, three employees of Conrail, an interstate carrier by rail, were being transported in a van owned by Blue Bird Coach Lines and driven by its employee Greg Hoover. At that time the three employees of Conrail were acting within the scope of their employment and in the furtherance of their employer's interests. The van collided with a utility pole and the three were injured.

Blue Bird Coach Lines was providing transportation for Conrail employees pursuant to a written "General Services Contract" between them which provided that Blue Bird shall be responsible for, and shall release, protect, defend, indemnify and save harmless Conrail from any and all loss, damage, cost and expense and all claims, actions and demands arising out of, A. personal injuries to any persons arising out of the performance of this agreement, and B. the Federal Employers Liability Act based on allegations to the effect that Conrail failed to provide a safe place to work.

Under this indemnity provision Blue Bird secured insurance coverages in two policies, one a basic automobile policy covering the vehicle and its driver issued by the within plaintiff Hartford, with limits of $500,000 per occurrence, and another $500,000 limit policy issued by Federal Insurance Company which covered its liability under the indemnity agreement. Blue Bird also secured an "Umbrella Liability Policy" from the defendant Motor Vehicle Casualty Company, covering its liability in excess of $500,000. It is the disagreement between Hartford and Motor Vehicle that forms the basis of this lawsuit. The relevant terms of their policies will be discussed herein.

All three injured railroad men instituted suits against various defendants. Two of them were settled at an early stage, Hartford and Federal contributed equally to settlement of $24,750 in each case and secured releases in favor of Blue Bird and Hoover. The claim of Jowdat George remained for trial.

On August 16, 1981, Hartford began a separate action against Motor Vehicle as well as the other defendants in the George suit for a declaratory judgment of its nonliability.

George's lawsuit made claims against Conrail under the FELA against Blue Bird and Hoover, under general negligence, and under contract against his own no-fault insurance carrier Home Insurance Co. There was definite strategic method in this apparently procedural madness.

Conrail moved for summary judgment on a cross-claim of indemnity against Blue Bird under its contract and this motion was granted.

The court severed the actions for negligence and for recovery under the no-fault policy from the FELA claim because it believed that the basic cause of action was one under the FELA and that the resolution of the entire case would be accomplished by the trial of that action, which would afford the plaintiff with full recovery. With respect to the claim against plaintiff's no-fault carrier we held that the Pennsylvania no-fault insurance act would not in any way limit or impair plaintiff's right to full recovery under the FELA which governs both liability and damages.

Before trial the FELA action of Jowdat George against Conrail was settled for $600,000, of which $400,000 was paid by Federal and $200,000 by Hartford, the insurance carrier for Blue Bird and Hoover.

Hartford had denied its liability under its policy with Blue Bird, which specifically excluded coverage against liability assumed by contract. Prior to the trial Hartford had requested Motor Vehicle to con-

tribute to a settlement with Jowdat George, which Motor Vehicle refused. In this suit Hartford seeks to recover $124,-750 from Motor Vehicle. This figure is computed on the basis that Federal had paid a total of $424,750 of its $500,000 limits, leaving unexpended a balance of its limits of $75,250; thus Hartford could claim the balance of all settlements over the $500,000 limits in recovery for the $224,750 which it had contributed to all settlements. Hartford sues as the contractual subrogee of Blue Bird. Motor Vehicle resists this claim for the reasons set forth below. Both parties have moved for summary judgment and there are no disputed issues of fact.

I. *The Limits of Underlying Liability.*

■ Motor Vehicle argues that the condition of its policy with respect to exhaustion of underlying limits has not been met. The policy reads:

Liability under this policy with respect to any occurrence shall not attach unless and until the insured, or the insured's underlying insurer shall have paid the amount of the underlying limits on account of such occurrence.

As set forth before, the claim of Jowdat George was settled by Blue Bird by the payment of $600,000 by its two insurers, Hartford in the amount of $200,000 and Federal in the amount of $400,000. The claims of the other two injured employees were settled at $24,750 each, Hartford paying $24,750 and Federal paying the same.

Both the Hartford policy and the Federal policy had a $500,000 per occurrence limit. For the three claims involved in this occurrence, Federal paid out a total of $424,750 and Hartford paid out $224,750. Thus neither underlying carrier had exhausted its limits. But the total paid out on behalf of Blue Bird, the insured, was $649,500.

Motor Vehicle thus refuses to pay because neither of the limits of the underlying insurers was exhausted. We think they are wrong.

We believe that Motor Vehicle's liability is determined by the following provisions of its policy:

*Conditions:*

J. *Loss Payable.* Liability under this policy with respect to any occurrence shall not attach unless and until the Insured, or the Insured's underlying insurer, shall have paid the amount of the underlying limits on account of such occurrence.

*and*

*Definitions:*

6. *Ultimate Net Loss.* The term "ultimate net loss" means the total sum of which the Insured or any company as his insurer, or both, become obligated to pay by reason of personal injury, ... claims, either through adjudication or compromise, ... and for litigation, settlement and adjustment of claims and suits which are paid as a consequence of any occurrence covered hereunder, ....

We find no requirement that the existence and extent of liability be established by any final judgment.

The Motor Vehicle policy required Blue Bird to maintain the underlying insurance coverage and even noted the companies carrying such coverage, but in any event it held Blue Bird responsible for that underlying liability:

*Conditions:*

Q. *Maintenance of Underlying Insurance.*

\* \* \* \* \* \*

Failure of the insured to comply with the foregoing shall not invalidate this policy but in the event of such failure, the Company shall only be liable to the same extent as it would have been had the Insured complied.

Federal and Hartford have paid a total of $649,500 on account of this occurrence on behalf of Blue Bird. Blue Bird contracted with Motor Vehicle to pay its losses in excess of $500,000. For losses under $500,-000 it protected itself by other insurance, as was required by its contract with Motor Vehicle. We find Motor Vehicle's argu-

ment that it is not yet liable because no single underlying carrier has paid the full amount of its policy limits untenable.

## II. *The "Volunteer Doctrine."*

Motor Vehicle argues that Hartford cannot recover from it because the payment contributed by Hartford to the settlement was made as a volunteer. There were exclusions in the Hartford policy a) against any liability assumed under contract; b) for any obligation which the assured may be held liable under any Workmen's Compensation, or similar law, and c) for any obligation of the assured to indemnify another because of bodily injury to an employee of the insured.

It is arguable that some, if not all three of the above exclusions apply to this situation.

Hartford was aware of the contract between Conrail and Blue Bird, and its indemnity provision. Before Jowdat George lawsuit came to trial Hartford filed a separate complaint for declaratory judgment against all the parties and their insurers to establish its non-liability. Blue Bird had agreed to indemnify Conrail against any liability for injuries to Conrail's employees that it was transporting. Conrail's duty to its employees under the FELA was non-delegable but it was still free to insure against its liability, in this case by a contract of indemnity. We held in our order of October 8, 1981 in the Jowdat George case that Conrail was entitled to indemnity from Blue Bird under the contract. We held that Jowdat George had no common law cause of action in negligence against Blue Bird because he pleaded that he was injured in the course of his employment by a common carrier by rail in interstate commerce and that, therefore, his exclusive remedy is under the FELA against his employer, its agents and employees, or parties performing duties under contract with his employer.

Hartford's second exclusion was against any liability arising under any Workmen's Compensation or any similar law. Despite Hartford's valiant effort to now demonstrate that the FELA is not a Workmen's Compensation Law because of differences in its application we are not convinced that it does not fit the definitional term of "any similar law". There is a wide variety of such laws among the states and their provisions vary. In any event we believe that Jowdat George could not maintain a common law action in negligence against any agent or employee of Conrail carrying out the railroad's function. Blue Bird as agent of Conrail is protected by the same umbrella as Conrail against such common law action.

Finally Hartford's policy excluded liability to any employee of Blue Bird arising out of the course of the employment or out of any obligation of Blue Bird to indemnify any other person because of such injury. The term "such injury" obviously refers back to the phrase "injury to any employee of the insured."

Despite this triple-barrelled protection of its policy terms and despite the court's pretrial ruling which would support its contentions, Hartford contributed $200,000 to the settlement of the Jowdat George claim, part of which it now seeks to recover. Motor Vehicle argues that in the light of the exclusions and of the judge's pretrial rulings in the Jowdat George case, Hartford was clearly a volunteer.

Hartford apparently had some lack of confidence in the draftsmanship of its own policy terms. This is natural in view of the thousands of precedents where insurance companies have had the terms of their exclusions construed most strongly against them. Hartford also appears to have had some hesitation in relying on the judge's pretrial ruling in its favor. In the most diplomatic language it argues that "it was acting under a reasonable uncertainty as to the invulnerability of Judge Weber's conclusion."

Hartford cites many reasons in support of its actions in contributing to the settlement all of which lead to the conclusion that it was acting to protect the interests not only of its insured as well as itself, but

also of the excess carrier, Motor Vehicle, the defendant here. Certainly it cannot be called an intermeddler, nor its action officious. See *Massachusetts Bonding and Insurance Co. v. CAr and General Insurance Co.*, 152 F.Supp. 477 (E.D.Pa.1957).

However, these principles apply to what we call equitable or legal subrogation. When subrogation is claimed under a contract, a different rule applies.

The *Restatement of Restitution* (1937) § 37 *Primary Obligor Liable, Payor Not Liable,* states the general rule applicable to the equitable doctrine of subrogation:

> A person who entered into a transaction as an obligor, or who is claimed by the creditor to be an obligor, upon an obligation as to which, as between such person and another, the other had a primary duty to discharge, and who had paid the creditor in discharge of the obligation at a time when it existed against the other, is entitled to indemnity from the other, although originally or at the time of the payment, the payor was under no duty to make the payment, unless his payment was officious.

 We find that the volunteer doctrine does not bar Hartford's recovery here. The volunteer doctrine does not apply when an insurance policy contains an express condition for subrogation. Under the heading *"Conditions,* Item 7, *Subrogation"*, the policy reads:

> In the event of any payment under this policy, the company shall be subrogated to the *insured's* rights of recovery therefor against any person or organization and the *insured* shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights.

We, therefore, conclude that Hartford is not barred in its present claim because of the volunteer doctrine.

III. *The Exhaustion of Hartford's Limits.*

We find no logic or precedent to support Motor Vehicle's argument that Hartford cannot recover here because it has not exhausted its individual policy limits. In fact, neither underlying carrier here exhausted its policy limits. The contract in suit here is the insurance policy between Blue Bird and Motor Vehicle. Blue Bird, through its insurance carrier, has paid in excess of $500,000 to settle the claims arising out of this occurrence. Hartford stands in the shoes of Blue Bird because of its contractual subrogation rights. We find that there is nothing to bar that claim as a matter of law.

As a result, the Motion of Motor Vehicle for Summary Judgment is DENIED, and the Motion of Hartford for Partial Summary Judgment is GRANTED.

Unfortunately for the court, this conclusion leaves it with the burden of trying the issue of the extent of Jowdat George's damages to determine if the $600,000 settlement was reasonable in amount.